STEINBERG, Judge:
The appellant, veteran William E. Crippen, appeals a November 15, 1994, Board of Veterans’ Appeals (BVA or Board) decision denying a claim for an earlier effective date for service connection for post-traumatic stress disorder (PTSD) based on an assertion that prior decisions of a Department of Veterans Affairs (VA) regional office (RO) were clearly and unmistakably erroneous under 38 C.F.R. § 3.105(a). Record (R.) at 8. Both parties have filed briefs, and the appellant has filed a reply brief. For the reasons that follow, the Court will affirm the decision of the Board.
I. Background
The veteran served in the U.S. Army from May 1967 to January 1969, and was awarded, inter alia, the Combat Infantryman Badge and Bronze Star Medal for his tour of duty in Vietnam. R. at 33, 206. His April 1967 enlistment medical examination report had cheek marks in both the “normal” and “abnormal” column for “psychiatric”, noted a recent hospitalization for an acute mental condition, and stated that he was fit for service. R. at 45^46. His separation medical examination report noted the presence of scars and stated that he had an “[e]motionally unstable personality, chronic, severe”. R. at 43.
The veteran filed with a VARO a July 1977 application for VA compensation or non-service-connected pension for a nervous condition. R. at 35-36. He submitted records of episodic treatment and hospitalization from 1974 to 1978, with several diagnoses of a personality disorder. R. at 53-86. In May 1978, the RO denied service connection for a personality disorder on the ground that that condition was “[constitutional or developmental”. R. at 89-90.
The veteran was hospitalized from December 1980 to January 1981 with diagnoses of chronic, delayed PTSD and explosive personality disorder. R. at 94. A February 1981 RO decision did not state that it was reopening the veteran’s claim, but it did briefly analyze his records and conclude that there was “no evidence that criteria for service connecting [PTSD] as outlined in [the VA] program guide are met” and that the “veteran has had continuing problems with the personality disorder.” R. at 98. The veteran was awarded Social Security Administration (SSA) disability entitlement effective February 1981. R. at 228. Examinations by two VA psychiatrists in May 1981 led to diagnoses of personality disorder, depression, and anxiety. R. at 100, 103. One of these examination reports recorded that the veteran was not currently working and that review of his medical records revealed that his preservice history had included hospitalization for “violent acting out against a relative”. R. at 102.
At an April 1981 RO hearing, the veteran filed a Notice of Disagreement (NOD) and testified under oath that in Vietnam he had been a rifleman with an airborne unit, had been wounded in the right forearm and face, and had been involved in heavy fighting during which he had feared for his life. R. at 108-11, 118. His representative asserted that the veteran’s conduct in service was good until he had completed his tour of duty in Vietnam, after which he was absent without leave on two occasions, and that records of his in-service treatment by a psychiatrist were being sought. R. at 105-06, 115. The veteran averred that before service he had had no nervous disorder and no drug or alcohol problem, and that the longest time he had held a job since separation from service was “six to eight weeks”. R. at 115— 16, 122. A May 1981 RO decision concluded that the hearing testimony and newly submitted service records verifying the veteran’s assignment as a rifleman in Vietnam did *416 not “warrant a change in denial of s[ervice] connection]” because “two psychiatrists point out that [the veteran’s] problems stem from a personality disorder.” R. at 130. A June 1981 letter to VA stated that the writer had employed the veteran for the previous six months as a salesman, that the veteran had “bragg[ed]” of “dup[ing]” VA into granting him a pension, and that the veteran and his wife had stolen money and supplies from the writer. R. at 132; see also R. at 216.
In February 1982, the veteran was hospitalized at a VA medical center (MC) with diagnoses of depression and probable PTSD. R. at 144-45. In March 1982, the RO received records from a children’s center reporting that the veteran had been a resident of the center for two years, from 1962 to 1964, with a diagnosis of moderately severe schizoid personality. R. at 153, 157, 159. A March 1982 VAMC report stated diagnoses of “mild to moderate” PTSD, alcohol dependency, mild anxiety disorder, and passive aggressive personality disorder with marked antisocial traits. R. at 162. The medical history recorded at that time noted that the veteran had recently been released from prison after serving twenty days of a one-year term for grand theft. R. at 149,163. A March 1982 RO decision stated that the newly submitted evidence did not warrant a “change in the [the] prior denial” of service connection for PTSD because the “veteran had psychiatric problems before service.” R. at 20Ó. The veteran was again hospitalized at the VAMC from April to May 1982 with diagnoses of delayed PTSD, alcohol abuse, and borderline personality disorder, and his VA physician noted upon his release that he was “not a good candidate for vocational] rehabilitation] or employment at this time”. R. at 167-68. In June 1982, the RO issued a decision concluding that the VAMC report “warrants no change” in the denial of service connection. R. at 209.
A February 1983 report requested by the BVA from the Director of the VA Mental Health and Behavioral Sciences Service at VA Central Office stated that the veteran had “borderline personality disorder” and that PTSD was “not confirmed”. R. at 213. In a June 3, 1983, BVA decision, the Board “reviewed the entire evidence of record” and found that the veteran did not have PTSD. R. at 219-26. The BVA noted that there had been “no reported gunshot wounds in service.” R. at 220. Thereafter, July and October 1983 RO decisions determined that newly submitted hospital reports of continued treatment for a nervous condition did not contain sufficient evidence to warrant a change in the denial of service connection. R. at 236, 238. The veteran was counseled by VA as an outpatient throughout 1983. R. at 175-97.
In February 1985, the RO received from a private mental health facility a letter stating that the veteran had been treated there since 1978 and was currently diagnosed as having PTSD “directly related to his combat experience” as well as borderline personality disorder. R. at 243-44. A February 1985 VA income statement completed by the veteran indicated that he was unemployed and receiving SSA benefits. R. at 246-48. An RO decision in March 1985 found that the medical reports and income statement “warrant[ed] no change in prior denial” of service connection for PTSD and no change in the prior denial of non-service-connected pension. R. at 250. A November 1985 Statement in Support of Claim from the veteran noted that he was currently hospitalized and stated: “This is a claim to establish [PTSD] as a service[-]connected disability.” R. at 254.
In January 1986, the veteran was hospitalized at the VAMC and given diagnoses of PTSD, depression, panic disorder, and substance abuse. R. at 256. An August 1986 RO decision stated that “no new and material evidence [had been] submitted which would warrant reversal of prior denial.” R. at 260. In January 1987 (see R. at 291), the veteran submitted records of SSA disability evaluations from 1982 to 1984 providing two diagnoses of PTSD. R. at 275, 288. One record expressly related PTSD to the veteran’s experiences in Vietnam. R. at 288. A January 1987 RO decision stated that the evidence was “new but does not warrant reversal of prior denial of s[ervice] connection] for PTSD.” R. at 292.
A report from a private psychologist in September 1989 opined that the veteran had chronic PTSD “from trauma experienced twenty years ago”. R. at 300. A December 1989 RO decision stated that no “new factual basis supporting the presence of chronic *417 PTSD due to wartime experiences” had been presented. R. at 303-04. A VA medical examination report from January 1990 noted scars on the right forearm and eyebrow, and the examiner stated: “I am unable to say they were produced by shrapnel.” R. at 309. In February 1990, the RO granted service connection for the scars (over the left eye and on the right arm), rated 0% disabling, but noted that service records contained no indication of combat injuries. R. at 311-12. In May 1990, the RO determined that March 1990 VAMC outpatient treatment records (R. at 315-16) “do not establish s[ervice] c[onneetion] for PTSD.” R. at 319.
At a February 1991 RO hearing, the veteran testified under oath that he was a “different person” when he returned from Vietnam and that he was currently unemployed. R. at 344, 348. A social worker who had counseled him testified under oath that the veteran had PTSD and that stressors described by the veteran had included killing enemy soldiers, seeing a close friend badly injured, and the loss of men in his squad. R. at 339-43, 350-52. A March 1991 hearing officer’s decision stated that no specific stressor could be verified and that no “adequate basis” had been presented to conclude that the veteran’s symptoms were due to in-service experiences rather than to “long[-]standing personality conditions which pre-existed service.” R. at 432-33. The veteran submitted copies of pages from psychiatry texts and March 1990 outpatient VA counseling records. R. at 362-77, 379-82. In May 1991, the RO concluded that the newly submitted evidence did “not warrant a change in the prior rating decision.” R. at 384. The veteran then submitted further outpatient VA counseling records from September 1989 to August 1990, R. at 387-427, and a letter from a social worker stating that the veteran’s score on an PTSD-assessment test and his “identified” stressors in Vietnam “supported] a diagnosis of [PTSD].” R. at 429.
In a November 1991 BVA decision, the Board concluded that evidence submitted since the January 1987 RO denial was new and material, and the Board remanded for the RO to obtain SSA records and an examination by a board of psychiatrists. R. at 435-39. January and March 1992 reports by two VA psychiatrists recorded diagnoses of PTSD. R. at 461, 465. A January 1992 report by a third psychiatrist diagnosed alcohol dependence and generalized anxiety. R. at 467-68. In May 1992, the RO granted service connection for PTSD, rated 100% disabling, effective September 1989. R. at 470-71. The veteran filed a November 1992 NOD in which he stated that the effective date of the award should be February 1985, when he had been “hospitalized for this condition” and had “reopened his claim”. R. at 501. At a July 1993 BVA hearing, the veteran argued that “the ratings from 3-1-85, up to and not including the 5-28-92[ ] rating[,] were clearly and erroneously in error”. R. at 527.
In the November 15, 1994, BVA decision here on appeal, the Board determined that “the preponderance of the evidence is against the claim for an earlier effective date for the grant of service connection for PTSD”. R. at 8. The Board determined that there had been no clear and unmistakable error (CUE) in the final, unappealed March 1985, August 1986, and January 1987 RO decisions. R. at 8-9. As to the March 1985 RO decision, the Board concluded that the November 1985 statement from the veteran was not an NOD and that the newly submitted outpatient records and February 1985 hospital records were cumulative because they “merely continued to reflect the divergence of diagnostic impressions” in that they diagnosed both PTSD and personality disorders. R. at 18-19. As to the August 1986 RO decision, the BVA found that the only newly submitted evidence had been the January 1986 VA medical report, which was not material because it had diagnosed multiple mental conditions. R. at 19. The Board did not discuss the newly submitted evidence received by the RO between February 1986 and January 1987, merely noting that the January 1987 RO denial was not clearly and unmistakably erroneous because “the evidence as a whole remained conflicting.” R. at 20.
II. Analysis

A. Generally Applicable Law

Section 3.105(a) of title 38, Code of Federal Regulations, provides:
Previous determinations which are final and binding, including decisions of service connection, degree of disability, age, marriage, relationship, service, dependency, line of duty, and other issues, will be ac *418 cepted as correct in the absence of [CUE]. Where evidence establishes such error, the prior decision will be reversed or amended. For the purpose of authorizing benefits, the rating or other adjudicative decision which constitutes a reversal of a prior decision on the grounds of [CUE] has the same effect as if the corrected decision had been made on the date of the reversed decision.
38 C.F.R. § 3.105(a) (1995). A claim of CUE is a collateral attack on a final RO decision. See Smith (William) v. Brown, 35 F.3d 1516, 1521 (Fed.Cir.1994); Eddy v. Brown, 9 Vet.App. 52, 57 (1996); Duran v. Brown, 7 Vet.App. 216, 224 (1994). The CUE review authority in 38 C.F.R. § 3.105(a) relates only to review of decisions of the agency of original jurisdiction (RO) and not to those of the Board. See Smith, 35 F.3d at 1527. In Russell v. Principi, the Court defined CUE as follows:
Either the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied.... [CUE] is the sort of error which, had it not been made, would have manifestly changed the outcome ... [, an error that is] undebatable, so that it can be said that reasonable minds could only conclude that the original decision was fatally flawed.
Russell, 3 Vet.App. 310, 313 (1992) (en banc); see also Damrel v. Brown, 6 Vet.App. 242, 245 (1994). “In order for there to be a valid claim of [CUE], ... [t]he claimant, in short, must assert more than a disagreement as to how the facts were weighed or evaluated.” Russell, 3 Vet.App. at 313; see also Eddy, supra.
Russell also established that, as a threshold matter, a CUE claim cannot be raised for the first time before this Court, but that the claim must have been the subject of a final prior BVA adjudication. Russell, 3 Vet.App. at 314-15. “A determination that there was a ‘[CUE]’ must be based on the record and the law that existed at the time of the prior ... decision.” Id. at 314. On appeal of a BVA determination that there was no CUE in a prior final RO decision, the Court’s review is limited to determining whether the Board’s conclusion is “‘arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law’ (38 U.S.C. § 7261(a)(3)(A))[,] and whether it is supported by an adequate statement of ‘reasons or bases’ (38 U.S.C. § 7104(d)(1)).” Eddy, supra; see also Glynn v. Brown, 6 Vet.App. 523, 530-31 (1994); Lizaso v. Brown, 5 Vet.App. 380, 385-86 (1993); Russell, 3 Vet.App. at 315. Finally, Russell established a limitation on this Court’s jurisdiction vis-a-vis a CUE claim that where the Court finds that there was an “undebatable” RO .error that might rise to the level of being clear and unmistakable, “[w]e view deciding this issue as a task for the Board in the first instance.” Russell, 3 Vet.App. at 320; see also Mason (Sangemetta) v. Brown, 8 Vet.App. 44, 53 (1995) (holding that Board, on claim to reopen, erroneously failed to consider CUE claim based on RO’s prior denial — in violation of 38 C.F.R. § 3.303(a) requirement to base adjudication “on review of the entire evidence of record” — of “the existence of evidence that did exist”).
According to applicable current law, once a claimant has submitted a well-grounded claim, the Secretary is required to assist that claimant in developing the facts pertinent to the claim. See 38 U.S.C. § 5107(a); 38 C.F.R. § 3.159 (1994); Littke v. Derwinski, 1 Vet.App. 90, 91-92 (1990). A failure to fulfill the duty to assist cannot constitute CUE. See Caffrey v. Brown, 6 Vet.App. 377, 383-84 (1994). But see id, at 384 (Steinberg, J., concurring in part and dissenting in part).
According to applicable current law, the Secretary must reopen a previous final disallowance of a claim when “new and material evidence” is presented or secured with respect to the basis for the disallowance of that claim. See 38 U.S.C. §§ 5108, 7105(c); Suttmann v. Brown, 5 Vet.App. 127, 135 (1993) (applying section 5108 to claim finally disallowed by RO). On a claim to reopen, a “two-step analysis” must be conducted under section 5108. Manio v. Derwinski 1 Vet.App. 140, 145 (1991). First, it must be determined whether the evidence presented or secured since the prior final disallowance of the claim (including a refusal to reopen because of a lack of new and material evidence) is new and material. See *419 Evans v. Brown, 9 Vet.App. 273, 283-85 (1996); Blackburn v. Brown, 8 Vet.App. 97, 102 (1995); Cox (Billy) v. Brown, 5 Vet.App. 95, 98 (1993); Colvin v. Derwinski, 1 Vet.App. 171, 174 (1991). Second, if the evidence is new and material, then the claim must be reopened and all the evidence of record reviewed to determine the outcome of the claim on the merits. See Jones (McArthur) v. Derwinski, 1 Vet.App. 210, 215 (1991).
As to step one under Manió, the determination whether to reopen the disallowance of a claim, the Court has synthesized the applicable law as follows:
“New evidence” is that which is not merely cumulative of other evidence of record. [See Colvin, supra.] Evidence is “material” where it is relevant to and probative of the issue at hand and where there is a reasonable possibility that, when viewed in the context of all the evidence, both new and old, it would change the outcome.
Blackburn, 8 Vet.App. at 102; see also Evans, 9 Vet.App. at 283; Struck v. Brown, 9 Vet.App. 145, 151 (1996); Cox, supra.
The Court has recently held:
The first step of the Manió two-step process as to a claim to reopen involves three questions: Question 1: Is the newly presented evidence “new” (that is, not of record at the time of the last final dis-allowance of the claim and not merely cumulative of other evidence that was then of record, see Struck, Blackburn, Cox, and Colvin, all supra)? Question 2: Is it “probative” of “the issue[s] at hand” (Coa; and Colvin, both supra) (that is, each issue which was a specified basis for the last final-disallowance (see Struck, supra))1 Question 3: If it is new and probative, then, in light of all of the evidence of record, is there a reasonable possibility that the outcome of the claim on the merits would be changed (see ibid.)1 As Blackburn indicated, affirmative answers to both questions 2 and 3 — involving the probative nature of the “new” evidence and the reasonable possibility of outcome change, respectively — are required in order for “new” evidence to' be “material”_ Blackburn, 8 Vet.App. at 102. As to those two “materiality” components, the credibility of the newly presented evidence is generally presumed under Justus [v. Principi, 3 Vet.App. 510, 513 (1992)] and Duran, ... supra. In looking at the first materiality component (whether the evidence found to be “new” is also probative) the focus is on the new evidence; as to the second materiality component (whether there is a reasonable possibility that the outcome on the merits would be changed), the focus is on all of the evidence of record rather than just on the new evidence. See Struck and Blackburn, both supra; Glynn [6 Vet.App. at 528-29]; Cox and Colvin, both supra.
Evans, 9 Vet.App. at 283. A Board determination as to whether evidence is “new and material” is a question of law subject to de novo review by this Court under 38 U.S.C. § 7261(a)(1). See Struck, supra, Evans, 9 Vet.App. at 283; Masors v. Derwinski, 2 Vet.App. 181, 185 (1992); Jones, 1 Vet.App. at 213; Colvin, supra; cf. Barnett v. Brown, 83 F.3d 1380, 1383-84 (Fed.Cir.1996) (determination whether or not new and material evidence had been submitted was one of “application of law to the facts of this case”).
A claim of CUE must be “based on ... the law that existed at the time of the prior [RO] decision” being collaterally attacked. Russell, 3 Vet.App. at 314. At the time of the three RO decisions — in 1985, 1986, and 1987 — that are the subject of CUE collateral attack in this case — the law applicable to reopening final RO disallowances was set forth in 38 U.S.C. § 4004(b) (1982) and 38 C.F.R. § 3.156 (the regulation remained unchanged from 1963 to 1990). See Spencer v. Brown, 4 Vet.App. 283, 289-90 (1993), aff'd, 17 F.3d 368 (Fed.Cir.1994). This Court held in Spencer that the combination of statutory provisions, regulations, and VA practice extant prior to the November 18, 1988, enactment of 38 U.S.C. §§ 3008 and 4004(b) (now §§ 5108 and 7104(b)) in the Veterans’ Judicial Review Act (VJRA), Pub.L. No. 100-687, § 103(a)(1), 102 Stat. 4105, 4107 (1988), provided for reopening “claims when new and material evidence is received from any source”. Spencer, 4 Vet.App. at 297; see also id. at 291-92 (citing Senate Committee Report and the Explanatory Statement on Compromise Agreement). The VJRA legislative history makes clear that when the Congress enacted section 3008 and revised section 4004(b) in 1988 it intend *420 ed to codify the then-existing law and practice on reopening. See explanatory statement ON COMPROMISE AGREEMENT ON DIVISION A of S. 11, 134 Cong. Rec. 31473, 31476 (1988), reprinted in 1988 U.S.C.C.A.N. 5782, 5834, 5841 (VJRA amendment to title 38 intended “to reflect the current. practice in which claims are reopened at the [RO] level”). Hence, the Court’s interpretation of current law set forth above is equally applicable to the pre-VJRA statutory provisions, regulations, and practice in effect in 1985,1986, and 1987, and would govern in any determination as to CUE in a denial of reopening by any of those RO decisions. See Russell, supra,

B. Specific CUE Claims Regarding Earlier Effective Date

The appellant argues that he is entitled to an earlier effective date for service connection for PTSD because the RO committed CUE in its March 1985, August 1986, and January 1987 decisions denying reopening of the claim initially denied by the Board on the merits in June 1983. Brief (Br.) at 11, 15. This argument raises, or appears to raise, three questions.
1. CUE claims reasonably raised. The first question is whether the appellant adequately raised his CUE claim as to a final RO decision. “If a claimant-appellant wishes to reasonably raise CUE there must be some degree of specificity as to what the alleged error is”. Fugo v. Brown, 6 Vet.App. 40, 43 (1993). “[M]erely to aver that there was CUE in a case is not sufficient to raise the issue.” Id. at 43-44. Assuming that the three RO decisions became final, the Court holds that the appellant raised a CUE claim with the requisite specificity because he argued for an earlier effective date for his award of service connection for PTSD and asserted that evidence compelling such an award was in the record at the time of the RO decisions in 1985, 1986, and 1987. See Dinsay v. Brown, 9 Vet.App. 79, 87-88 (1996) (claim for earlier effective date was claim of CUE in final RO decision disallowing claim); Flash v. Brown, 8 Vet.App. 332, 340 (1995) (to be awarded earlier effective date, veteran must show CUE in RO decision disallowing higher rating).
2. Determining whether prior RO denials were on merits. The second question is whether the March 1985, August 1986, and January 1987 RO decisions were denials of reopening due to a lack of new and material evidence, or were determinations on the merits after the claim was reopened. The August 1986 RO decision expressly stated that it was based on a lack of new and material evidence. Therefore, the Court holds that the August 1986 RO decision was a denial of reopening.
However, neither the March. 1985 nor the January 1987 RO decision expressly stated that no new and material evidence had been submitted or contained a description of the prior evidence. Both concluded that the newly submitted evidence warranted no change in the “prior denial”. R. at 250, 260. Under the law then in effect, see Jones, 1 Vet.App. at 213-14, this may have often been the way ROs denied reopening. See generally Spencer, 4 Vet.App. at 290-98. But it is not generally a fruitful exercise to speculate on whether a particular RO decision was a merits denial or a denial of reopening, especially as to RO decisions, such as the ones at issue here, rendered before February 1, 1990, when 38 U.S.C. § 5104(b) was added to require RO decisions to specify the evidence considered and the reasons for the disposition. See Eddy, 9 Vet.App. at 58. (Section 5104(b) was originally added as section 3004(a)(2) and then recodified in section 5104(b) by the Department of Veterans Affairs Health-Care Personnel Act, Pub.L. No. 102-40, § 402(b)(1), 105 Stat. 238 (1991).) Before that, RO decisions routinely lacked such specificity. See Veterans’ Benefits Amendments of 1989, Pub.L. No. 101-237, § 115,103 Stat.2062, 2065-66 (1989); see also S.Rep. No. 126,101st Cong., 1st Sess. 295-97 (1989), reprinted in 1989 U.S.C.C.A.N. 1469, 1701-03 (Committee-reported bill was intended to remedy problems found in 1989 General Accounting Office survey (GAO/HRD-89-24, “Improvements Needed in Processing Disability Claims”), which had reported that VARO decision notices were unclear and uninformative and generally failed in disability compensation cases to provide “the reason or reasons for VA’s decision” (page 295)). Here, for example, of the three RO decisions in question, only the 1986 decision is relatively clear that it is not a merits denial, but rather a denial of reopening the claim disallowed by the BVA in 1983, and none con *421 tained a full discussion of the evidence presented.
In this regard, the Court notes that this very difficulty in construing pre-February 1990 RO decisions is the reason why this Court in Russell and Mason, both supra, premised its conclusions that the RO had failed to consider highly probative evidence on an express denial by the RO in pre-February 1990 decisions that such evidence actually existed. See also Eddy, supra (distinguishing Russell and citing Glynn, 6 Vet.App. at 531 (distinguishing Russell on ground that, as to CUE claim in Glynn, prior RO decision had not made “a specific finding that appellant never injured his back during service, an error which could possibly have formed the basis for a CUE reversal”)).
As the following discussion illustrates, it does not matter whether a particular RO decision was or was not a merits adjudication, because the disposition of the CUE claim would ultimately turn on the same question. As noted above, this Court has decided that CUE can be raised as to a final RO decision determining, under 'certain specified circumstances discussed below, that new and material evidence had not been submitted to reopen a claim. See Mason, 8 Vet.App. at 52. And Mason further established that if an RO decision, assailed as CUE, had undebatably erred in denying the reopening of a previously and finally disallowed claim, the Board would have to decide whether, had the error not been made, the outcome after reopening — that is, on the merits — would have “manifestly” been changed. Id. at 53; see also Fugo and Russell', both supra. Hence, the Court need not here try to sort out the question of what the RO decisions, actually did in 1985 and 1987 (denied reopening, or reopened and denied on the merits), because the answer to that question does not affect the validity, or lack thereof, of the CUE claims as to those two RO decisions.
3. Review of Board decision denying CUE. Against this background, we turn now to the third question — determining whether the Board was arbitrary or capricious in its finding that the three RO decisions had not committed CUE. The Court finds, on the basis of two alternative grounds, that the Board was not arbitrary or capricious in denying each of the three CUE claims.
a. CUE challenges to RO denials of reopening: First, a challenge to an RO denial of a claim to reopen clearly includes a challenge to the RO’s weighing of the evidence before it at the time of the claim to reopen. See Barnett, supra (stating that question whether to reopen entails application of law to facts of case). Such a challenge generally would involve a reweighing of the facts, contrary to Russell’s maxim that in order to raise a valid CUE claim “the claimant ... must assert more than a disagreement as to how the facts were weighed or evaluated.” Russell, 3 Vet.App. at 313; see also Damrel, 6 Vet.App. at 246 (asking BVA “simply ... to reweigh the evidence” “ ‘can never rise to the stringent definition of CUE’ under 38 C.F.R. § 3.105(a)” (quoting Fugo, 6 Vet.App. at 44)). That is why Russell itself and Mason thereafter — and Glynn in between — recognized that a CUE claim that was premised on an RO’s clear failure to consider certain highly probative evidence, in violation of the regulation requiring adjudications to be based on all evidence of record (38 C.F.R. § 3.303(a)), did present a viable theory for a CUE claim. That is, challenging a failure to consider such evidence is not challenging the weighing or evaluation of evidence; it is asking that such process take place for the first time and thus does not constitute the re weighing or re evaluation that Russell and its progeny have proscribed.
In this regard, both Russell and Mason, in dealing with RO decisions issued before the February 1990 enactment and effective date of what is now 38 U.S.C. § 5104(b) (prescribing that RO decisions specify evidence considered and reasons for disposition), required that it be clear from the face of the RO decision that a particular piece of highly probative evidence had not been considered in the RO’s adjudication of the case. See Eddy, 9 Vet.App. at 58. Because the RO had no obligation at the time to recite the evidence considered, “[s]ilence in a final RO decision made before February 1990 cannot be taken as showing a failure to consider evidence of record.” Ibid. Hence, Russell and Mason established the high standard for pre-Febru-ary-1990 RO decisions that a regulatory violation of failing to consider all the evidence of record could be found based on the RO’s *422 having actually denied the very existence of highly probative evidence, as the Court found the RO actually had done in both cases but had not done in Eddy and Glynn, both supra, See Russell, 3 Vet.App. at 321 (despite existence of in-service audiometric test showing hearing loss in both ears, 1972 RO decision found that “service records do not indicate defective hearing while on active duty”); Mason, 8 Vet.App. at 52-53 (Court held that § 3.303(a) was violated where 1988 RO decision had indicated that only new evidence submitted was “packet of information” that was not medical evidence, thereby, in effect, “denying the existence of’ lay statements). (The Court notes that there may be another basis for finding that regulatory violation: that there was no evidence before the RO that could have supported denial of the claim on the merits; that is, all the evidence militated in support of the claim. As the discussion in part II.B.3.b., below, makes clear, such an evidentiary picture was not present at the time of any of the three RO decisions at issue here.)
In contrast, in none of the three pre-February-1990 RO decisions being collaterally attacked in the instant case did the RO deny “the very existence of the evidence” that could possibly have changed the outcome of the underlying claim (nor did it deny the claim where there was no evidence to support its denial). Russell, supra. Hence, the Court holds that these three pre-February-1990 RO decisions are not subject to CUE collateral attack on the basis of a garden-variety erroneous denial of reopening to the extent that they were, as the 1986 RO decision clearly was, a denial of reopening for lack of new and material evidence. See Fugo, 6 Vet.App. at 45 (“simply to label garden-variety types of error as CUE” is not sufficient to raise viable CUE claim).
b. Application of Mason merits-outcome-change standard: Alternatively, and even if there could be a valid CUE attack on a garden-variety failure to reopen — that is, where the claimant does not assert a total failure to consider highly probative evidence — when there was new and material evidence before the RO at the time it denied reopening, the Court also holds that, regardless whether the 1985 and 1987 RO decisions were denials of reopening of the claims at issue, the BVA was not arbitrary and capricious in denying the three particular CUE claims in this case. This is because, as the discussion below illustrates, even if there had been an undebatable error made in those adjudications, assuming, without deciding, that each of these decisions became final, and mindful of the Russell/Mason prescription that CUE as to an RO decision will be determined by examining what the outcome would have been on the merits, the Court concludes that the CUE claim as to each of the three RO decisions runs afoul of the Russell requirement, noted above, that the error must have been of “the sort ... which, had it not been made, would have manifestly changed the outcome at the time it was made,” Russell, 3 Vet.App. at 313 (emphasis added), or, as Mason put it, “that is, that service connection^ the matter there at issue on the merits,] would have resulted” had the error been corrected, Mason, 8 Vet.App. at 53. Requiring a change in the merits outcome preserves the finality of the VA adjudication process except where substantive rights would be adversely affected if an undebatable adjudication error were not corrected.
As to the 1985 RO decision, there was evidence of record against the claim at the time of the March 1985 decision, and the medical reports submitted in 1985 did not differ so markedly from the evidence reviewed in the 1983 BVA decision that it could be said that an award of service connection would “manifestly” have resulted. Cf. Mason, supra Although the February 1985 report expressly linked PTSD to the veteran’s experiences in Vietnam, there were numerous diagnoses of PTSD in the record at the time of the 1983 BVA decision and the record in 1983 contained evidence that the veteran’s mental problems were due to one or more conditions, other than PTSD; thus, there would have been a rational basis for a decision that the veteran did not incur a mental disability in service. Accordingly, the Board’s finding of no CUE in the 1985 RO decision was not arbitrary or capricious. See Russell, 3 Vet.App. at 315; see also Butts v. Brown, 5 Vet.App. 532, 539 (1993) (“arbitrary” standard not met if agency had rational basis for its decision) (citing *423 Environmental Defense Fund v. Costle, 657 F.2d 275, 283 (D.C.Cir.1981)).
Similarly, as to the 1986 and 1987 RO decisions, neither the January 1986 medical report nor the SSA records submitted in 1987 would “manifestly” have changed the outcome on the merits in those decisions in light of all of the evidence, because those records included diagnoses of mental conditions in addition to PTSD, and the previously submitted evidence, as noted above, contained evidence that provided a rational basis for a decision that the veteran did not incur a mental disability in service. Accordingly, whether or not the 1985 and 1987 RO decisions were denials of reopening or merits denials, the BVA was not arbitrary or capricious in concluding that no CUE was committed in those decisions.
In view of this holding, the Court need not today address (as the Court did in Mason, 8 Vet.App. at 52, where the RO had failed to address the specific CUE contention at issue), whether the Board decision contained an inadequate statement of reasons or bases for its rejection of the CUE claims.
c. Sequential analysis: Accordingly, as held in part II.B.2.a., above, in order to determine whether a CUE claim attacking a prior, final pre-February 1990 RO decision’s denial of reopening presents a viable basis for a CUE collateral attack, it will generally be necessary only to determine whether the contention is of the sort made in Russell and Mason — that the RO decision on its face denied the existence of highly probative evidence, in violation of an applicable regulatory requirement to consider all evidence of record — (or perhaps whether it failed to grant the claim where there was no'evidence to support a denial of it). As to RO decisions issued after January 31, 1990, the failure to describe in the decision a piece of highly probative evidence would be a violation of the requirement in 38 U.S.C. § 5104(a) that RO decisions contain a summary of the evidence considered and the requirement in 38 C.F.R. § 3.303(a) that determinations be “based on review of the entire evidence of record”. If either of these thresholds is traversed successfully, so that it is determined that there was an undebatable error made by the RO, then, as held in part II.B.2.b.,' above, CUE can be found only if it is determined that, had the error of not considering highly probative evidence not been made in the RO decision denying reopening, the outcome on the merits of the claim would manifestly have been changed in the Mcmio-step-two adjudication that did not occur because of that error.
The concurring opinion suggests that if the record at the time of an RO’s erroneous denial of reopening “compels the conclusion that an appellant was entitled to prevail on a merits issue” (infra at 425, slip op. at. 19), then CUE should attach. However, as pointed out in part II.B.3.a., above, a collateral challenge to an RO denial of reopening is generally a challenge to the RO’s weighing of the evidence, and thus should not generally be a viable CUE claim under Russell, 3 Vet.App. at 313. If the theory of the concurrence were adopted by the Court, it would result in the anomalous and inequitable situation of a challenge that could not be a valid claim of CUE in a merits decision nevertheless being converted into one merely by the interposition of a claim to reopen that was wrongfully denied reopening. That would surely be a matter of the tail wagging the dog — where a substantive right would be determined solely on the basis of the procedural posture of a case. The Court rejected exactly this kind of result when it held in Caffrey that a failure to fulfill the duty to assist cannot be a basis for CUE even though the medical record that an RO had erroneously not sought had later been the basis for an award of service connection as soon as the RO had obtained that record. Caffrey, 6 Vet.App. at 380.
The concurring opinion also states that the majority is “struggling mightily to have it both ways” by holding, on the one hand, that the law as to reopening has not changed substantially since 1985 and noting, on the other hand, that a 1990 statutory provision required ROs thereafter to specify the evidence that they considered and the reasons for their decisions. This is comparing apples and oranges. There is a difference between Congress’ enactment of a statutory requirement and a Court’s interpretation of existing law. In Evans, 9 Vet.App. at 283-84, the Court was refining its interpretation of statu *424 tory provisions, based on the evolution of its understanding and the novel questions presented for' review. The Court’s interpretation of reopening law in Evans did not change the law — as indeed it could not, given that it is not the province of a Court to act as a legislature. The 1990 statutory enactment requiring ROs to specify the evidence considered and the reasons for their decisions did change the law, but not as to the nature of the evidence required to reopen a claim (which was the issue in Evans)-, the 1990 provision merely added procedural requirements for the manner in which RO decisions, including decisions as to reopening, are to be set forth. Those requirements are inescapably applicable in determining what evidence was considered by an RO in a post-January 1990 RO decision.
Further as to the characterization of Evans by our concurring colleague, Evans could not have changed a Glynn rule regarding an evidence bank. See Bethea v. Derwinski, 2 Vet.App. 252, 254 (1992) (holding that only the en banc Court may overturn prior prece-dential Court action). Rather, Evans expressly stated that the Court “disagree[d]” with the Secretary’s assertion that Glynn controlled, and found that Glynn had not provided the answer to the evidence-bank question. Evans, 9 Vet.App. at 285. Moreover, the concurrence’s reference to Glynn is entirely a smokescreen. This opinion cites Glynn, ante at 421-22, in connection with analysis of the elements of a CUE claim, not with the law as to reopening.

C. CUE Claims as to Duty to Assist

The appellant also attempts to raise a claim of CUE by asserting that the Secretary reopened the claim in 1985 and did not adequately carry out a duty to assist under 38 U.S.C. § 5107(a). Br. at 13-14; see 38 C.F.R. § 3.159 (1994); Littke, supra. The Court held in Caffrey, supra, that a failure to fulfill the duty to assist cannot constitute CUE, and the Court thus will not entertain that CUE claim. Although the BVA decided this contention on the merits as a CUE claim and found no duty-to-assist violation, it was not prejudicial error because the appellant merely received an adjudication to which he was not entitled. See Masors, 2 Vet.App. at 189.

D. NOD as to 1985 RO Decision

Finally, the appellant contends that the November 1985 statement from the veteran, R. at 254; was an NOD as to the March 1985 RO decision that was not followed by a requisite Statement of the Case, see 38 U.S.C. § 7105(d)(1). The Court agrees with the Board on this point, and holds that this November 1985 statement did not constitute an NOD because it made no reference to any RO decision with which any disagreement was expressed and did not express an intent to appeal to the BVA. See 38 C.F.R. § 20.201 (1995) (NOD must express “disagreement with [an RO] determination and a desire for appellate review”); see also Hamilton v. Brown, 4 Vet.App. 528, 531 (1993) (en banc), aff'd, 39 F.3d 1574, 1582-85 (Fed.Cir.1994).
Ill, Conclusion
Upon consideration of the record and the briefs of the parties, the Court holds that the appellant has not demonstrated that the BVA committed error — in its findings of fact, conclusions of law, procedural processes, or articulation of reasons or bases — that would warrant remand or reversal under 38 U.S.C. § 7104(d)(1), 7261, 38 C.F.R. § 3.105(a), and the analysis in Gilbert v. Derwinski, 1 Vet.App. 49, 56-59 (1990). The Court affirms the November 15,1994, BVA decision.
AFFIRMED.
KRAMER, J., concurs.