Citation Nr: 1434240 
Decision Date: 07/31/14 Archive Date: 08/04/14

DOCKET NO. 14-04 140 ) DATE
 )
 )


THE ISSUES

1. Whether there was CUE in an August 19, 2010 Board decision, which denied the moving's party claim of CUE in the July 2008 Board decision that assigned an initial 70 percent disability rating for gunshot wound injury residuals to Muscle Groups XIII, XIV, XVI, XVII, and XVIII.

2. Whether there was CUE in a July 2, 2008 Board decision, which assigned an initial 70 percent disability rating for gunshot wound injury residuals to Muscle Groups XIII, XIV, XVI, XVII, and XVIII.

3. Whether there was clear and unmistakable error (CUE) in a January 17, 2001 decision of the Board of Veterans Appeals (Board), which denied the moving party's claim of CUE in a July 1953 rating decision that assigned a 20 percent evaluation for left sciatic nerve injury.

(The issues of entitlement to earlier effective dates earlier for the award of a total disability rating due to individual unemployability (TDIU) and entitlement to special monthly compensation (SMC) based on aid and attendance, housebound status are addressed in a separate decision.)


ATTORNEY FOR THE BOARD

J. Murray, Counsel 


INTRODUCTION

The moving party is a Veteran who had active duty from May 1950 to June 1956. 

These matters come before the Board as an original action on the motions of the moving party to reverse or revise, on the basis of CUE, Board decisions promulgated on January 17, 2001, July 2, 2008, and August 19, 2010. 

It appears that the moving party has raised a claim of CUE in a July 1953 rating decision for failing to award separate evaluations under Diagnostic Code 5013 for osteoporosis, Diagnostic Code 5263 for gen recurvateum and Diagnostic Code 7801 for residual scar. The moving party specifically asserts that the 1953 rating decision failed to consider the findings in the January 1953 service x-ray film report of the left knee that showed evidence of osteoporosis and the June 1953 VA examination that revealed evidence of genu recurvateum and residual scar to support the assignment of separation evaluations. Notably, in a February 2013 rating decision, the RO awarded a separate noncompensable evaluation for residual scar, effective from July 1, 1952. This award fully satisfies the moving party's assertion to a separation evaluation for residual scar, and he has not yet appealed the initial assigned evaluation. That being said, the moving party's claim of CUE in the July 1953 rating decision for failure to assign separate evaluations for osteoporosis and genu recurvateum has not yet been addressed by the RO, and it is not before the Board at this time. As such, the matter is referred back to the RO for appropriate action. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2002).


FINDINGS OF FACT

1. The January 17, 2001 Board decision was adequately supported by the evidence then of record, and was not undebatably erroneous; the record does not demonstrate that the correct facts, as they were known in July 1953, were not before the Board or that the Board incorrectly applied statutory or regulatory provisions extant at that time, such that the outcome of the claim would have been manifestly different but for the error.

2. In February 2009, the Veteran filed a motion alleging that the July 2, 2008 Board decision contained CUE.
 
3. In August 2010, the Board issued a decision in which it found that the July 2008 Board decision that assigned an initial 70 percent disability rating for gunshot wound injury residuals to Muscle Groups XIII, XIV, XVI, XVII, and XVIII, did not contain CUE.
 
4. In September 2013, VA received the Veteran's motion alleging CUE in the July 2008 Board decision that assigned an initial 70 percent disability rating for gunshot wound injury residuals to Muscle Groups XIII, XIV, XVI, XVII, and XVIII.

6. The August 19, 2010 Board decision was adequately supported by the evidence then of record, and was not undebatably erroneous; the record does not demonstrate that the correct facts, as they were known in July 2008, were not before the Board or that the Board incorrectly applied statutory or regulatory provisions extant at that time, such that the outcome of the claim would have been manifestly different but for the error.




CONCLUSIONS OF LAW

1. Clear and unmistakable error is not shown in the January 1, 2001 Board decision. 38 U.S.C.A. § 7111 (West 2002); 38 C.F.R. §§ 20.1400-20.1411 (2013).

2. The Board is precluded by law from addressing the same issue of CUE in the July 2, 2008 Board decision, and the appeal is dismissed with prejudice. 38 U.S.C.A. § 7111 (West 2002); 38 C.F.R. § 20.1409 (c) (2013).

3. Clear and unmistakable error is not shown in the August 19, 2010 Board decision. 38 U.S.C.A. § 7111 (West 2002); 38 C.F.R. §§ 20.1400-20.1411 (2013).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Veterans Claims Assistance Act of 2000 (VCAA)

The VCAA provides that VA shall make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the claimant's claim for a benefit under a law administered by the Secretary, unless no reasonable possibility exists that such assistance would aid in substantiating the claim. In part, the VCAA specifically provides that VA is required to make reasonable efforts to obtain relevant governmental and private records that the claimant adequately identifies to VA and authorizes VA to obtain. See 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159.

The Board finds that the Veteran's CUE claim is not subject to the provisions of the VCAA. See Livesay v. Principi, 15 Vet. App. 165, 179 (2001)(holding there is nothing in the text or the legislative history of VCAA to indicate that VA's duties to assist and notify are now, for the first time, applicable to [CUE] motions.") As a claim of CUE is not by itself a claim for benefits, CUE is fundamentally different from any other kind of action in the VA adjudicative process. As a consequence, VA's duties to notify and assist contained in the VCAA are not applicable to CUE motions. The Board notes that the moving party has been accorded sufficient opportunity to present his contentions. The moving party has stated his desire to decline representation in these matters. There is no indication that they have further argument to present.

Motion for Revision of Board Decision based on CUE

The Board has original jurisdiction to consider motions for revision of prior Board decisions. Motions should be filed at the Board, but requests filed elsewhere within VA and transmitted to the Board shall be treated as if filed at the Board. See 38 C.F.R. § 20.140 (c), (d). 

CUE is a very specific and rare kind of error; it is the kind of error of fact or law, that when called to the attention of later reviewers compels the conclusion to which reasonable minds could not differ, that the result would have been manifestly different but for the error. See, e.g., Fugo v. Brown, 6 Vet. App. 40, 43-44 (1993); Damrel v. Brown, 6 Vet. App. 242, 245 (1994); Russell v. Principi, 3 Vet. App. 310, 313-14 (1992). Allegations of CUE must be raised with sufficient particularity. See Phillips v. Brown, 10 Vet. App. 25 (1997). To establish CUE in a prior, final decision, all three of the following criteria must be met: (1) either the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied; (2) the error must be undebatable; and (3) the error must be of the sort which, had it not been made, would have manifestly changed the outcome at the time it was made. See Stallworth v. Nicholson, 20 Vet. App. 482, 487 (2006); Damrel, supra; Russell, supra.

38 C.F.R. § 20.1403 codifies the current requirements for a CUE motion that the Court of Appeals of Veterans Claims (Court) has defined for motions of CUE in Board decisions as: 

(1) It is the kind of error, of fact or of law, that when called to the attention of later reviewers compels the conclusion, to which reasonable minds could not differ, that the result would have been manifestly different, but for the error. 

(2) Generally, either the correct facts, as they were known at the time, were not before the Board, or the statutory and regulatory provisions extant at the time were incorrectly applied. 

(3) It is an error in the Board's adjudication of the appeal which, had it not been made, would have manifestly changed the outcome when it was made. 

Additionally, 38 C.F.R. § 20.1403(d) gives examples of situations that are not CUE. CUE is not a: changed medical diagnosis; failure to fulfill the duty to assist; disagreement as to how the facts were weighed or evaluated; change in interpretation of a statute or regulation. 

38 C.F.R. § 20.1403(c) also indicates that, where it is not absolutely clear that a different result would have ensued, but for the error, the error complained of cannot be CUE. No new evidence will be considered, unless the Board decision was decided on or after July 21, 1992. See 38 C.F.R. § 20.1403(b). In those cases, the record technically includes matter possessed by VA not later than 90 days before the file was transferred to the Board, provided that the documents could reasonably be expected to be part of the record. See 38 C.F.R. § 20.1403(b)(2). In addition, the law precludes remands or other referral for the purpose of deciding the motion. 38 U.S.C.A. § 7111(e); 38 C.F.R. § 20.1405(b). 

The benefit of the doubt provisions of 38 U.S.C.A. § 5107(b) are inapplicable in CUE. See 38 C.F.R. § 20.1411(a). In fact, the moving party bears the burden of presenting specific allegations of error that would amount to CUE. Thus, for a moving party to make a successful CUE showing is an extremely difficult burden.

Motion for Revision of 2010 Board Decision based on CUE

The moving party asserts that the August 19, 2010 Board decision committed CUE in the failure to find CUE in the July 2008 Board decision that denied a higher rating than 70 percent for gunshot wound injury residuals to Muscle Groups XIII, XIV, XVI, XVII, and XVIII. Specifically, the moving party argues that the 2010 Board failed to find that the 2008 Board decision did not consider all the evidence at the time of the July 1953 rating, and the 2010 Board failed to find that the award of separate evaluations under other potentially applicable diagnostic codes should have been considered in the 2008 Board decision. 

A review of the record reflects that the moving party did not appeal the August 19, 2010 Board decision. Accordingly, it became final. See 38 C.F.R. § 20.1100(a). There are two exceptions to the rule of finality of VA decisions, i.e., challenges based on CUE in a prior, final decision (38 U.S.C.A. §§ 5109A, 7111), and reopened claims based on new and material evidence (38 U.S.C.A. § 5108). See Cook v. Principi, 318 F.3d 1334 (Fed. Cir. 2002). 

In the August 2010 decision, the Board denied the Veteran's claim of CUE in a July 2008 Board decision, which assigned an initial 70 percent evaluation for gunshot wound injury residuals to Muscle Groups XIII, XIV, XVI, XVII, and XVIII. The Board found that the July 2008 Board decision was final, and that the July 2008 Board decision was adequately supported by the evidence then of record, and was not undebatably erroneous as the record demonstrated that the correct facts as known in July 1953 were considered and the Board correctly applied the statutory and regulatory provisions extant at that time. 

In its 2010 decision, the Board cited to the moving party's contentions that the 2008 Board erred in finding that only a 70 percent evaluation for muscle group injuries was warranted by the evidence. The 2010 Board specifically considered the moving party's argument that the 2008 Board improperly concluded that his combined muscle injuries more nearly approximated intermediate anklyosis and thus only warranted a 70 percent evaluation under Diagnostic Code 5250 of the Schedule for Rating Disabilities (1945). The 2010 Board noted that the moving party did not argue that any evidence of record in July 1953 was erroneously omitted or not contemplated by the 2008 Board. Rather, the moving party objected to the 2008 Board decision that found the evidence of record, such as the moving party's ability to walk, supported a finding that his muscle injury did not more nearly approximate severe injuries to the pelvic girdle and thigh muscles equivalent to unfavorable anklyosis or extreme muscle injury equivalent to a flail joint, which would have supported higher evaluation than 70 percent under Schedule for Rating Disabilities Diagnostic Codes 5250 and 5254, respectively. 

Even though the Schedule for Rating Disabilities (1945) did not specifically discuss the ability to ambulate in the applicable diagnostic criteria, the 2008 Board reference to the moving party's ability to walk was not an "undebatable" error, which would have manifestly changed the outcome at the time it was made. Instead, the 2010 Board found that reasonable minds could consider the ability to move a joint, such as the ability to move the hip during ambulation, as probative evidence on the issue of whether the moving party's pelvic girdle and thigh muscle disabilities were of such a severity so as to warrant a combined rating equivalent to intermediate anklyosis as opposed to a higher combined evaluation equivalent to either a flail joint or unfavorable anklyosis. As the moving party's assertion was simply a disagreement with the factual determination that the 2008 Board reach and how that Board weighed the evidence, the 2010 Board found that the moving party's disagreement as to how the facts were weighed by the 2008 Board did not constitute CUE. 

The 2010 Board also acknowledged the moving party's argument that the 2008 Board misapplied the law by not applying an "amputation rule" under Schedule of Rating Disabilities, Paragraph 35 (1945) that was in effect in 1953. The 2010 Board cited to the law, as it existed in 1953, that stated that amputation rule applied to the combination of all disability ratings pertaining to an extremity, i.e. neurologic ratings, musculoskeletal, and orthopedic ratings, etc., but noted that the July 2008 Board decision solely contemplated the evaluation warranted for a combination of his muscle group injuries. The July 2008 Board expressly relied on the provisions applicable to the combination of ratings of muscle injuries in the same anatomical segment, or muscle injuries affecting the movement of the same joint as provided under the Schedule for Rating Disabilities, Paragraph 16(2) (1945). The 2010 Board found that the 2008 Board decision applied the correct law in determining that an evaluation 70 percent, and not higher, was warranted for his muscle group injuries. 

In October 2013, the Board received the moving party's motion for revision or reversal of the August 2010 Board decision. The moving party contends that "it is crystal clear and undebatable reasonable minds could not differ" that the Board failed to consider all the evidence of record at the time of the July 1953 rating decision in the 2008 Board decision. It appears that the moving party asserts that there was evidence of record in July 1953 that 2008 Board decision did not contemplated or was erroneously omitted. In particular, the moving party cites generally that evidence in his "Military Hospital records" was omitted as well as the findings from the June 1953 VA examination, which he contends could support the assignment of a higher initial evaluation than 70 percent. He also appears to assert CUE in the 2010 Board decision for erroneously failing to find CUE in the 2008 Board decision for not considering a higher evaluation under Diagnostic Code 5255 (mal union of hip). 

After a careful review of the record, the Board finds that its August 2010 decision that denied the claim of CUE in the July 2008 Board decision was not clearly and unmistakably erroneous, as claimed by the Veteran, for the reasons that follow. 

Initially, the Board notes that the documents considered in the 2010 Board decision consisted of the July 2008 decision, as well as the evidence considered by the RO in the July 1953 rating decision. Such evidence consisted of the Veteran's claim (residuals of gunshot wound to the left hip), his service treatment records, and the report of a June 1953 VA examination. The 2010 Board considered whether the 2008 Board committed CUE in its determination to assign an initial 70 percent evaluation for muscle group injuries. That is, the 2010 Board reviewed whether the 2008 Board committed any error of fact or error of law that, without any doubt, would have resulted in a manifestly different decision. 

The 2010 Board's decision included a definition of CUE and listed the three criteria that must all be satisfied in order to establish CUE in a prior, final decision and made a finding of fact that was supported by rationale explaining how a criterion was not met (i.e., the error of fact or law that was the sort, had it not been made, would have manifestly changed the outcome at the time it was made). The moving party contended that the Board's August 2010 decision should be revised to award a higher evaluation than 70 percent for muscle group injuries, to include separate evaluation, because it made clear errors of fact. However, in considering whether the 2008 Board decision contained CUE, the 2010 Board addressed all pertinent facts as they were known at the time of the 1953 rating decision. That is, the correct facts as they were known at the time of the 1953 rating decision were before the Board in August 2010 for its CUE consideration. Moreover, the 2010 Board considered the propriety of the statutory or regulatory provisions that were applied by the 2008 Board decision. The 2010 Board explained how the 2008 Board correctly applied the applicable law and reasonable minds could differ on whether the fact the moving party's ability to walk was probative evidence that more closely approximated the criteria for a combined rating equivalent to intermediate anklyosis, and would not have resulted in a different outcome. 

Although the 2010 Board did not specifically address whether consideration of a higher evaluation under Diagnostic Code 5255 was erroneously omitted by the 2008 Board at that time, the application of that Diagnostic Code would not have resulted in a manifestly different decision. Notably, the moving party asserts that the 1953 x-ray evidence was not considered. A January 1952 service x-ray report shows findings of healed fracture of the femur and intact joint spaces, and possibility of infection about the hip that could not be ruled out. The June 1953 x-ray report shows findings of healed comminuted intertrochanteric fracture involving the femur and with excellent position and alignment. The evidence at the time of the July 1953 rating decision as considered by the 2008 and 2010 Board decisions did not reflect findings of nonunion or mal union of the left hip so as to warrant consideration of an evaluation under that diagnostic code. See Schedule of Rating Disabilities, 38 C.F.R. § 4.71a, Diagnostic Code 5255. Rather, the moving party's residual of gunshot wound as manifested by limitation of left hip was considered under the criteria for severe muscle group injuries. See Schedule for Rating Disabilities, Musculoskeletal Disabilities (1945). 

Under the regulations in effect at the time of the July 1953 rating decision, the evaluation of the same disability from injuries to the muscles, nerves and joints of an extremity may overlap to an extent as included in the appropriate section for their evaluation, but the evaluation of the same manifestations under different diagnoses are to be avoid. See Schedule for Rating Disabilities, Paragraph (14) (1945). Assigning a separate compensable rating for limitation of motion due residuals of left hip fracture would have amounted to impermissible pyramiding. As such, the Board does not find any evidence that the 2010 Board decision made any error in consideration of CUE in the 2008 Board decision, let alone that any such an error would have manifestly changed the outcome of the issue.

In short, the Veteran's allegations of CUE in the August 2010 Board decision that found no CUE in the July 2008 Board decision have no merit. He has not shown how the Board's 2010 conclusion of no CUE is itself CUE. The Board in 2010 addressed the Veteran's claim of CUE on the merits, as previously described, but his current pleading of CUE appears largely rooted on how the 2008 Board reached a factual determination and weighed the evidence, which as explained above, does not constitute CUE. See 38 C.F.R. § 20.1403(d). The moving party generally argues that had the Board properly considered the facts before it, then the result would have been manifestly different. This assumption, too, is incorrect, as the Board considered the pertinent records, in determining whether the July 2008 decision contained CUE. 

There is nothing in the 2010 Board decision that would compel a conclusion, to which reasonable minds could not differ, that the Board committed CUE in upholding the 2008 Board decision as being free of CUE. It is noted that any disagreement with how the Board weighed and evaluated the facts on record in this regard does not constitute CUE. Further, there is no allegation or showing that the Board's decision in August 2010 was not in accordance with established case law and the applicable criteria of 38 U.S.C.A. § 7111; 38 C.F.R. § 20.1403. Consequently, the appeal must be denied.

Motion for Revision of July 2008 Board Decision based on CUE

The moving party asserts that the July 2, 2008 Board decision committed CUE in the failure to assign a higher rating than 70 percent, to include an award of TDIU, for gunshot wound injury residuals to Muscle Groups XIII, XIV, XVI, XVII, and XVIII. 

Notably, in February 2009, the moving party filed a motion for revision of July 2, 2008 Board decision on CUE. His motion was denied in an August 2010 Board decision. At that time, the moving party asserted that the 2008 Board committed CUE in the failure to assign a higher rating than 70 percent for gunshot wound injury residuals to Muscle Groups XIII, XIV, XVI, XVII, and XVIII. 

Initially, the Board observes that VA regulations pertaining to the revision of a prior Board decision on the basis of CUE are set forth in 38 C.F.R. §§ 20.1400 through 20.1411. In pertinent part, such regulations provide that, once there is a final decision on a motion under this subpart relating to a prior Board decision on an issue, that prior Board decision on that issue is no longer subject to revision on the grounds of CUE. Subsequent motions relating to that prior Board decision on that issue shall be dismissed with prejudice. See 38 C.F.R. § 20.1409(c). This provision prevents a claimant from presenting the same challenges based on CUE as to a particular issue in a Board decision when there is a final decision on the merits of a CUE claim relating to that issue. 

Under 38 C.F.R. § 20.1409(c), the Board's regulations specify that a moving party has only one opportunity to challenge a Board decision on the basis of CUE. The United States Court of Appeals for the Federal Circuit (Federal Circuit) has affirmed that a claimant is allowed only one request for revision based on CUE for each Board decision, even if a claimant's second request for revision based on CUE attempts to raise a different theory of CUE. Hillyard v. Shinseki, 695 F.3d 1257, 1258 (2012). In that case, the Federal Circuit held that that there is a difference between a Board decision and RO decisions with respect to CUE claims. The regulations governing CUE challenges to finality of RO decisions do not limit the number of times a claimant may raise a CUE claim as to a specific RO decision. 38 U.S.C.A. § 5109A; 38 C.F.R. § 3.105; Andrews v. Nicholson, 421 F.3d 1278 (Fed. Cir. 2005); Andre v. Principi, 301 F.3d 1354 (Fed. Cir. 2002). In contrast, the regulation limits each claimant to one challenge to the finality of each Board decision. Hillyard, 695 F.3d at 1259 (rejecting argument that each "theory" of CUE represents a different claim and thus 38 C.F.R. § 20.1409(c) permits multiple CUE challenges as long as each challenge is based on a different CUE theory).

Here, the Veteran has previously asserted that the 2008 Board committed CUE in the failure to assign a higher rating than 70 percent for gunshot wound injury residuals to Muscle Groups XIII, XIV, XVI, XVII, and XVIII, and his motion was denied in the August 2010 Board. As such, the moving party's additional allegations cannot be considered by the Board.

The record shows that the Veteran has been sent copies of the Board decisions and particularly that addressing his first CUE motion. Copies of the decisions have also been associated with the Veteran's claims file. Because there has been a Board decision on whether that July 2008 Board decision contained CUE with respect failure to assign a higher rating than 70 percent for gunshot wound injury residuals to Muscle Groups XIII, XIV, XVI, XVII, and XVIII, another review of the same issue is precluded, despite any new CUE allegations. 38 C.F.R. § 20.1409(c).

In summary, the Board's July 2008 decision that awarded an initial 70 percent evaluation for gunshot wound injury residuals to Muscle Groups XIII, XIV, XVI, XVII, and XVIII, and the August 2010 decision as to whether the July 2008 decision contained CUE, are final, and thus the 2008 Board decision is no longer subject to revision on the grounds of CUE. Thus, under these circumstances dismissal with prejudice is warranted. Id.

Motion for Revision of January 2001 Board Decision based on CUE

The moving party asserts that there was CUE in the January 17, 2001 Board decision that declined to find CUE in a July 1953 rating decision that assigned a 20 percent evaluation for left sciatic nerve injury. 

A review of the record reflects that the moving party did not appeal the January 17, 2001 Board decision. Accordingly, it became final. See 38 C.F.R. § 20.1100(a). There are two exceptions to the rule of finality of VA decisions, i.e., challenges based on CUE in a prior, final decision (38 U.S.C.A. §§ 5109A, 7111), and reopened claims based on new and material evidence (38 U.S.C.A. § 5108). See Cook v. Principi, 318 F.3d 1334 (Fed. Cir. 2002). 

The essence of the Veteran's argument is that in the January 2001 decision, the Board erroneously found that the RO's July 1953 rating decision did not contain CUE when it awarded service connection for left sciatic nerve injury and assigned a 20 percent evaluation. Specifically, the Veteran argues that the Board failed to consider all the evidence at the time of the July 1953 rating. As discussed in further detail below, the Board finds that CUE has not been shown.

In first looking to see whether the January 2001 Board decision contained factual error, the Board notes that the January 2001 Board decision was limited to a review of the record and the law that existed when the July 1953 rating decision was made. Although the moving party indicates that the 2001 Board decision failed to contemplate the findings contained in the report of the June 1953 VA examination, the Board notes that the 2001 Board decision specifically discusses the findings from the June 1953 examination in that decision. The 2001 Board decision specifically cited to the findings contained in both his service and post-service treatment records. It was noted that the June 1953 VA examination showed that the Veteran complained of dragging of the left foot as designated in the medical history, but the examiner did not make such a finding. Evidence of marked weakness of the anterior tibialis muscle was observed, and a diagnosis of the left lower extremity disability as partial paralysis of the sciatic nerve, not complete paralysis, was provided. The 2001 Board noted that there was no diagnosis of drop foot or indication that the Veteran had lost the use of the left foot in the June 1953 VA examination report.

The moving party does not indicate that there was any other evidence of record at the time of the original July 1953 rating decision that was erroneously omitted or not contemplated by the January 2001 Board that would have affected the outcome of that decision. Rather, he has essentially objected to the January 2001 Board decision because the Board found that at the time of the July 1953 rating decision there was no CUE in the RO's assignment of a 20 percent evaluation instead of a higher rating under Diagnostic Code 8520 of the Schedule for Rating Disabilities (1945). 

Because the moving party does not indicate that the January 2001 Board decision misinterpreted or omitted facts that were of record in July 1953, the Board finds that his assertion is simply a disagreement with the factual determination that the Board reached and with how the Board weighed the evidence in its January 2001 decision. However, disagreement as to how the facts were weighed or evaluated by the Board cannot constitute CUE in a Board decision. 38 C.F.R. § 20.1403(d); Fugo v. Brown, 6 Vet. App. 40 (1993); Crippen v. Brown, 9 Vet. App. 412 (1996). 

Moreover, the record does not otherwise demonstrate, and the moving party does not specifically assert, that the Board incorrectly applied statutory or regulatory provisions extant at that time. 

Again, the Board reiterates that the moving party has not identified any specific pertinent evidence or facts of record in July 1953 that was not considered by the Board in January 2001 that would have resulted in a manifestly different outcome in this matter. The facts that the 2001 Board cited in its decision are consistent with the evidence associated with the claims file at the time of the decision. Additionally, the law as it was interpreted at that time was correctly applied. 

In conclusion, the moving party has not identified any specific finding or conclusion in the January 2001 Board decision which was undebatably erroneous. Moreover, the record does not reveal any kind of error of fact or law that, when called to the attention of later reviewers, compels the conclusion, to which reasonable minds could not differ, that the result would have been manifestly different but for the error. 

For these reasons, the Board finds that the Board's January 2001 decision, which found no clear and unmistakable error in a July 1953 rating decision which assigned a 20 percent evaluation for left sciatic nerve injury does not contain CUE. 38 U.S.C.A. § 7111; 38 C.F.R. §§ 20.1400, 20.1403, 20.1404. Accordingly, the motion is denied.



ORDER

The motion for reversal or revision of the August 2010 Board decision declining to find CUE in the July 2008 Board decision which assigned an initial 70 percent disability rating for gunshot wound injury residuals to Muscle Groups XIII, XIV, XVI, XVII, and XVIII, is denied.

The motion for reversal or revision of a July 2008 Board decision, which assigned an initial 70 percent evaluation for gunshot wound injury residuals to Muscle Groups XIII, XIV, XVI, XVII, and XVIII, is dismissed with prejudice.

The motion for reversal or revision of the January 2001 Board decision declining to find CUE in the July 1953 rating decision that assigned a 20 percent evaluation for sciatic nerve, is denied.




____________________________________________
MICHAEL LANE
 Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs