# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 00-206

TIMOTHY J. JORDAN, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued May 1, 2001                    Decided   September 26, 2002  )

*Ronald L. Smith*, of Washington, D.C., for the appellant.

*Gary E. O'Connor*, with whom *Tim S. McClain*, General Counsel; *R. Randall Campbell*, Acting Assistant General Counsel; and *Carolyn F. Washington*, Deputy Assistant General Counsel, all of Washington, D.C., were on the briefs, for the appellee.

Before KRAMER, *Chief Judge*, and IVERS and STEINBERG, *Judges*.

STEINBERG, *Judge*:  The appellant, Timothy J. Jordan, through counsel, seeks review of a November 1999 decision of the Board of Veterans' Appeals (Board or BVA) that determined that there was no clear and unmistakable error (CUE) in an April 1983 Board decision that had denied his claim for Department of Veterans Affairs (VA) service connection for a right-knee disorder. Record (R.) at 2, 9.  The appellant filed a brief, the Secretary filed a motion for summary affirmance, and the appellant filed a brief in reply.  Subsequent to oral argument, the appellant and the Secretary each filed a supplemental brief in accordance with a Court order and the Secretary filed a letter of supplemental authority.  The Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons set forth below, the Court will affirm the Board decision on appeal.

## I. Relevant Background

The veteran served in the U.S. Marine Corps from November 1969 to January 1970. R. at 12. In August 1968, prior to his entry into service, he was involved in a motorcycle accident that caused multiple contusions and lacerations to his face and left leg. R. at 80. In a March 1969 letter, Dr. Thomas F. Scott, a private physician, stated that, following treatment for these injuries, the veteran had "later [(sometime prior to January 17, 1969,)] contacted [the physician] by telephone [and] stat[ed] that the right knee was painful and stiff, [and that] he [had] experienced discomfort in this extremity intermittently since the time of the accident." *Ibid.* Dr. Scott's letter further stated:

> The [veteran] was advised to have an [x-]ray of the right knee taken[,] and this was performed on 1-17-69. . . . Interpretation: No bony lesion demonstrated. The joint space appears to be of normal width both medially and laterally.
>
> In conclusion, I feel that the patient has completely recovered from the injuries sustained in the accident of 8-27-68. The patient will have a permanent scar of the left lower extremity and some minor scars of the face.

*Ibid.*

The veteran's service entrance medical examination records reported an eight-inch scar below the knee on the left leg (R. at 18) but noted that "no disqualifying defects or communicable diseases were noted this date [(November 24, 1969)]". R. at 16-21. The veteran did not note any illness or injury in the medical-history-questionnaire portion of these records (R. at 16) and recorded "No" in response to the following questions: "Have you ever had any illness or injury other than those already noted? . . . Have you consulted or been treated by clinics, physicians, healers, or other practitioners within the past 5 years?" (R. at 17).

According to a December 1969 Naval Medical Board (Medical Board) report, the veteran, in his third week of service, was referred to the Medical Board for "survey" after an orthopedic consultation for complaints of knee pain. R. at 24. The report (1) recorded a diagnosis of "chondromalacia right patella, EPTE [(existed prior to entrance in service)]"; (2) listed under "origin" that this condition was "not due to [his] own misconduct" and was "not incurred in [the] line of duty"; (3) noted that the condition "existed prior to entry [into service and was] not aggravated by service" and "may be permanent"; and (4) included a recommendation of "discharge [because of] erroneous enlistment". R. at 23. The following questions on the report all were answered in the

2

affirmative: "Did the member appear before the [M]edical [B]oard in person?"; "Has the member been advised of the Medical Board findings?"; and "Has the member been offered an opportunity to submit a rebuttal statement in writing?" *Ibid.* In the examination summary attached to its report, the Medical Board stated:

> This man reports that he injured his right knee in a motorcycle accident some fifteen months ago. Since that time[,] he has had intermittent pain and has noticed crepitation in his right knee. A history of his knee injury is not made on his [enlistment medical examination reports].
>
> Physical Examination at the present time reveals some vague tenderness about the right knee. There is marked patello-femoral crepitation with flexion and extension, both audible and palpable. The x-rays are within normal limits. The remainder of the general physical examination is within normal limits.

R. at 24. Also attached to the Medical Board report is a "Statement of patient concerning the findings of a Medical Board", which recorded the following statement, signed by the veteran: "I have been informed of the findings of the [M]edical [B]oard of 31 Dec 69 in my case that my present condition is NOT physically qualified for duty and of the recommendation of the [Medical] Board that I be discharged from the naval service for reason of erroneous enlistment." R. at 22. This statement also included the following sentence: "Having been informed of the findings and recommendation of the [Medical] Board, *I do (not)* desire to submit a statement in rebuttal." *Ibid.* (emphasis added). There is no marking on the form to indicate that the veteran selected either "do" or "(not)". *See ibid.*

On August 6, 1981, the veteran filed an application for VA compensation or pension for "chondromalacia right, EPTE service connected [sic]". R. at 36. In a November 1981 decision, a VA regional office (RO) denied the veteran's claim for service connection and found that the condition had "[e]xisted prior to service" and was "not aggravated beyond natural progress during service". R. at 49. In a June 1982 Substantive Appeal to the BVA, the veteran stated, inter alia, that he "did not even know [he could] [r]ebut[] . . . to the [M]edical [B]oard at [the] time of discharge". R. at 62. In August 1982 sworn testimony before the BVA (R. at 65-78), he stated that (1) as a result of the August 1968 accident, he had skinned his right knee below the kneecap, which caused a bruise and some pain and stiffness (R. at 72, 75-76); (2) he never had experienced any crackling or pain in

3

that knee prior to service (*ibid.*); (3) he had injured his knee "in the course of basic training, doing a lot of leg work, extensive running around . . . , jumping up and down[,] and going through some vigorous type of [basic training] that they put you through" (R. at 74); and (4) he had never met personally with the Medical Board (R. at 71).

In April 1983, the BVA denied the veteran's claim for service connection for a right-knee disorder. R. at 99. The Board reasoned:

> In this case, the evidence clearly demonstrates [that] the veteran experienced a trauma before service to his right kneecap. Thus, the Board is persuaded that there is clear and unmistakable evidence that a right knee trauma preexisted the veteran's active service and the presumption of soundness is rebutted.
>
> The question remaining before the Board is whether during the veteran's brief period of active service, his preexisting right[-]knee injury increased in severity, as distinguished from a temporary increase in symptoms. The evidence indicates that following his motorcycle accident, the veteran experienced symptoms for several months, finally seeking further evaluation in January 1969. [Although] the activities of recruit training may have been painful due to an increased use of the affected joint, the Board finds no evidence of reinjury or other clinical findings showing an increase in the underlying pathology of his knee disorder.

R. at 98.

In December 1998, the veteran submitted to the Board a petition for revision, on the grounds of CUE, of the Board's April 1983 decision. R. at 123-26. The veteran's representative filed with the Board an October 1999 motion for revision of the April 1983 Board decision (but titled this document both a "Motion for Revision" and "Appellant's Brief"). R. at 153-56. This document stated in pertinent part:

> The [veteran] maintains [that] the 1983 Board's finding of fact that there was no increase in the severity of the right knee disability is unsupported by the record. He claims [that] he was found physically fit at induction and [that] his right[-] knee [condition] was aggravated by physical conditioning exercises during basic training.

R. at 154. In the November 1999 BVA decision here on appeal, the Board found that there was no CUE in the April 1983 Board decision and that, accordingly, that decision should not be revised or reversed under 38 U.S.C. § 7111. R. at 9.

4

Following oral argument before the Court, the Court issued a May 3, 2001 order directing the parties to file supplemental briefing addressing, inter alia, "[t]he extent (if any) to which the Secretary has implemented through regulation the words 'and was not aggravated by such service' in 38 U.S.C. § 1111." *Jordan (Timothy) v. Principi*, No. 00-206, 2001 WL 504943 (Vet. App. May 3, 2001) (per curiam order). The appellant filed his supplemental brief in June 2001, and the Secretary filed his in September 2001.

## II. Analysis

### A. CUE Law and Regulations

Once a BVA decision has become final, as had the 1983 BVA decision at issue here, it generally may not be reversed or amended in the absence of CUE. *See* 38 U.S.C. § 7111; 38 C.F.R. §§ 20.1400-20.1403 (2001); *cf.* 38 U.S.C. § 5109A (revision of RO decision on basis of CUE); 38 C.F.R. § 3.105(a) (2001) (same). Pursuant to section 7111, this Court has jurisdiction to review a BVA decision that considered a claim asserting CUE in a previous BVA decision if that claim was pending or was filed on or after November 21, 1997. *See Swanson v. West*, 12 Vet.App. 442, 452 (1999); *Lane v. West*, 11 Vet.App. 412, 413 (1998) (per curiam order); *Wilson (Richard) v. West*, 11 Vet.App. 253, 254 (1998) (per curiam order).

Section 20.1403 of title 38, Code of Federal Regulations, provides, in pertinent part:

> (a) *General*. [CUE] is a very specific and rare kind of error. It is the kind of error, of fact or of law, that when called to the attention of later reviewers compels the conclusion, to which reasonable minds could not differ, that the result would have been manifestly different but for the error. Generally, either the correct facts, as they were known at the time, were not before the Board, or the statutory and regulatory provisions extant at the time were incorrectly applied.
>
> . . . .
>
> (c) *Errors that constitute [CUE]*. To warrant revision of a Board decision on the grounds of [CUE], there must have been an error in the Board's adjudication of the appeal which, had it not been made, would have manifestly changed the outcome when it was made. If it is not absolutely clear that a different result would have ensued, the error complained of cannot be clear and unmistakable.

38 C.F.R. § 20.1403(a), (c); *see Russell v. Principi*, 3 Vet.App. 310, 313-14 (1992) (en banc); *see also Bustos v. West*, 179 F.3d 1378, 1380 (Fed. Cir. 1999) (expressly adopting the "manifestly changed the outcome" language in *Russell, supra*); *Damrel v. Brown*, 6 Vet.App. 242, 245 (1994); *cf. Bustos*, 179 F.3d at 1381 (noting that 38 U.S.C. § 5109A "merely codified 38 C.F.R. § 3.105 and the Court of Appeals for Veterans Claims' long[-]standing interpretation of CUE"). In *Russell*, the Court held: "A determination that there was a '[CUE]' must be based on the record and the law that existed at the time of the prior . . . decision." *Russell*, 3 Vet.App. at 314; *see also* 38 C.F.R. § 20.1403(b). "In order for there to be a valid claim of [CUE], . . . [t]he claimant, in short, must assert more than a disagreement as to how the facts were weighed or evaluated." *Russell*, 3 Vet.App. at 313; *see also* 38 C.F.R. § 20.1403(a); *Damrel, supra*. A CUE claim must also demonstrate that if the error(s) had not been made it (they) "would have manifestly changed the outcome". *Russell, supra*; *see also Bustos*, 179 F.3d at 1380. Moreover, the Court held in *Fugo v. Brown* that "to reasonably raise CUE there must be some degree of specificity as to what the alleged error is and . . . persuasive reasons must be given as to why the result would have been *manifestly* different but for the alleged error." *Fugo*, 6 Vet.App. 40, 44 (1993); *see also Crippen v. Brown*, 9 Vet.App. 412, 420 (1996).

*Russell* also established that, as a threshold matter, a CUE claim cannot be raised for the first time before this Court; instead, the claim must have been the subject of a final prior BVA adjudication. *Russell*, 3 Vet.App. at 314-15. The CUE claim presented here is a collateral attack on a final BVA decision. *Cf. Crippen*, 9 Vet.App. at 418 (as to collateral attack on prior **RO** decision); *see also Mason (Sangernetta) v. Brown*, 8 Vet.App. 44, 51 (1995) (generally, effective date earlier than that awarded in previous RO decision may be awarded only if there was CUE in that decision or it never became final); *Fugo, supra*. Just as when the Court reviews a Board decision that found no CUE in a prior final **RO** decision, *see Eddy v. Brown*, 9 Vet.App. 52, 57 (1996); *Damrel*, 6 Vet.App. at 246; *Russell*, 3 Vet.App. at 315, when the Court reviews a Board decision that found no CUE in a prior final **Board** decision, the Court's review is limited to determining whether the Board's conclusion about the prior final decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" (38 U.S.C. § 7261(a)(3)(A)) and whether it is supported by an adequate statement of "reasons or bases" (38 U.S.C. § 7104(d)(1)), *see Beyrle v. Brown*, 9

6

Vet.App. 377, 384 (1996) (holding that Board failed to provide adequate statement of reasons or bases for rejection of claim of CUE as to RO decision); *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990); *see also Eddy* and *Russell*, both *supra*.

The U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has recognized that this Court's caselaw as to review of a Board decision that there was no CUE in a prior final RO decision is equally applicable to a collateral CUE attack on a prior final BVA decision under section 7111:

> First, Rule 1403(a) is consistent with 38 U.S.C. § 7111. We have stated that, in 38 U.S.C. § 5109A, which relates to CUE at the RO and which in relevant part is identical to § 7111, Congress expressly adopted the Court of Appeals for Veterans Claims' definition of CUE that requires that "a claimant must show . . . an error that would manifestly change the outcome of a prior decision." *Bustos*, 179 F.3d at 1381. Rules 1403(a) and 1403(c) adhere to the "but for" test affirmed in *Bustos* and established by the Court of Appeals for Veterans Claims in *Russell*, 3 Vet.App. at 313-14. *See also Yates v. West*, 213 F.3d 1372, 1374-75 (Fed. Cir. 2000).

*Disabled Am. Veterans v. Gober*, 234 F.3d 682, 696-97 (Fed. Cir. 2000).

### B. Court's Jurisdiction

The appellant presents the following CUE argument as to the Board's April 1983 decision and 38 U.S.C. § 1111:

> The Board denied the appeal on the ground that there was no evidence [that] Mr. Jordan had re-injured his knee or that there had been an increase in the underlying knee pathology during service. The Board thereby unlawfully relieved the Government of its burden to prove by clear and unmistakable evidence [that] the pre-service injury had not been aggravated and denied service connection because aggravation had not been affirmatively established by evidence. . . . The Board unlawfully denied service connection even though the statutory presumption of aggravation had not been rebutted by clear and unmistakable evidence that aggravation of the [v]eteran's right knee injury had not occurred during service. Depriving Mr. Jordan of the benefit of the [38 U.S.C.] § 1111 presumption of aggravation changed the outcome of his claim.

Appellant's Brief (Br.) at 8-9. The Secretary argues in part that the Court should not consider the appellant's CUE argument because, although the appellant raised *a* CUE argument before the Board, he did not raise *this specific* CUE argument. Secretary's Motion (Mot.) at 1, 6-7. The appellant responds in his reply brief that he should be allowed to raise his CUE argument before the Court because he "has a right to invoke this Court's jurisdiction to challenge that [April 1983 BVA]

decision." Reply Br. at 2. He cites to *Maggitt v. West*, 202 F.3d 1370, 1376-77 (Fed. Cir. 2000), to support his position.

In *Andre v. West*, this Court stated as to its jurisdiction in the context of CUE claims and the Federal Circuit's *Maggitt* opinion:

> In *Maggitt*[, *supra*], the . . . Federal Circuit held that "a broad [Notice of Disagreement] . . . may confer jurisdiction over the entire request for a benefits entitlement." *Id.* at 1375. This would include particular arguments advanced in support of a *particular* benefit request where the Court *does* possess jurisdiction over that benefit request. *Id.* However, a CUE claim is "a collateral attack on a final [VA] decision" and must be alleged with specificity. [(Citations omitted.)] . . . Because CUE claims by their very nature must allege "some degree of specificity," *Crippen*[, 9 Vet.App. at 420] . . . , each specific theory underlying an attack on a final decision would necessarily constitute a separate claim.

*Andre*, 14 Vet.App. 7, 10 (2000) (per curiam order), *aff'd sub nom. Andre v. Principi*, __F.3d __,__, No. 01-7008, 2002 WL 1980717, at *6 (Fed. Cir. Aug. 29, 2002) ("each 'specific' assertion of CUE constitutes a claim that must be the subject of a decision by the BVA before the [U.S. Court of Appeals for Veterans Claims] can exercise jurisdiction over it" (quoting *Russell*, 3 Vet.App. at 315)). Hence, *Andre* held, in effect, that a different argument for CUE is a different CUE claim, and reached this conclusion after consideration of the following rather general argument for application of the logic of *Maggitt* to a claim of CUE, to wit: Because CUE must be plead with some degree of specificity, *see*, *e.g.*, *Sondel v. Brown*, 6 Vet.App. 218, 220 (1994), the change of a theory underlying a CUE claim could be interpreted in certain cases as representing not an appeal of the CUE claim rejected by the Board, but an entirely new CUE claim over which the Board has not rendered a decision and over which the Court thus lacks jurisdiction, *see* 38 U.S.C. § 7252(a) (Court has jurisdiction over decisions of Board); and CUE claims are unlike those contemplated by *Maggitt*, wherein the claim and the argument are essentially one and the same.

In his filing, entitled "Appellant's Brief", to the Board, the appellant in the instant case argued in part as follows: "[T]he 1983 Board's finding of fact that there was no increase in the severity of the right[-]knee disability is unsupported by the record. He claims [that] he was found physically fit at induction and [that] his right[-]knee [condition] was aggravated by physical conditioning exercises during basic training." R. at 154. The Board, in its November 1999 decision, noted: "The

appellant essentially argues that, at the time of its April 1983 decision denying entitlement to service connection for a right[-]knee disorder, the Board failed to properly apply the 'presumptions of soundness and aggravation.' See 38 U.S.C.[] §§ 1111, 1137, 1153". R. at 3. In his opening brief to this Court, the appellant states the issue on appeal as follows:

> Where a veteran was entitled to the presumption of soundness provided by 38 U.S.C.[] § 1111 . . . , was the decision of the Board . . . , holding there was no [CUE] in a 1983 Board decision, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law where the 1983 decision unlawfully relieved the Government of its burden to prove non-aggravation in order to rebut the presumption and denied the claim because the veteran failed to prove aggravation?

Br. at 1.

Put succinctly, the appellant argued before the Board that the Secretary had failed to show by competent evidence that the appellant's knee condition had not been aggravated in service. Before the Court, the appellant argues that the Secretary has failed to rebut by competent evidence the purported aggravation prong of the section 1111 presumption of soundness as it relates to his knee condition. The only notable differences between his two arguments are that (1) he did not cite section 1111 before the Board and (2) his arguments before the Court are phrased in a slightly different manner. Neither of these differences should be sufficient to deny him, on the basis that he has raised a new CUE claim, jurisdiction to obtain review in this Court. This is because, under *Fugo*, *supra*, his rephrasing of his CUE argument still meets the requirement that he allege error with "some degree of specificity". *See Bradley v. Principi*, 14 Vet.App. 255, 256-57 (2001) (per curiam order) ("each [CUE] theory alleged necessarily constitutes a separate claim"); *Crippen*, 9 Vet.App. at 420; *Sondel*, *supra* (although "the appellant has raised the issue of CUE before the Board, he did not raise the specific CUE *issue* presently before this Court" (emphasis added)); *Fugo*, 6 Vet.App. at 44. Furthermore, although the Secretary argues before the Court that the appellant did not argue his section 1111 theory before the Board, it is apparent that the Board thought that he had, as evidenced by its citation to section 1111 when it summarized the appellant's arguments. R. at 3.

Accordingly, we hold that the CUE claim that the appellant presented to the Board set forth a theory of CUE based on a failure by the Board in 1983 to apply properly the presumptions of sound condition and aggravation as they were then set forth in the former sections 1111 and 1153 of title

9

38, U.S. Code, and that that CUE claim encompassed the arguments made in support of that theory to the Court. His contentions before the Court merely place this argument within the rubric of the statutory framework but do not alter the essential nature of what he argued to the Board. In that regard, the Court stresses that its holding is based on three factors: (1) the Board's characterization of the issue as an argument that the previous Board decision had failed to apply properly the presumptions of "soundness and aggravation"; (2) the Court's recognition of the unique character of CUE claims as collateral attacks on prior final VA adjudications; and (3) the Court's recognition that the liberal construction of a VA claimant's pleadings must be tempered somewhat in CUE cases because of the special nature of CUE claims (although, nonetheless, *Fugo* does not require pleading with ***exactitude***, only with some degree of specificity). To hold otherwise would shackle appellants, who are generally unrepresented by counsel before the Board, with the verbatim text in Court proceedings of whatever words they used to plead before the Board. *Maggitt* stands at least for the proposition that an appellant can flesh out and rephrase his argument before this Court, and *Fugo*'s requirement of "***some degree of specificity***" is broad enough to allow an appellant to rephrase and provide additional argument and support for the same basic CUE argument presented before the Board. *Cf. Andre v. Principi*, __F.3d at __, 2002 WL 1980717, at *5-6 (holding that U.S. Court of Appeals for Veterans Claims had no jurisdiction to review appellant's challenge to 1973 RO decision on CUE grounds that were "entirely separate and distinct claims that the Board's decision [on appeal] had not addressed"). Therefore, the Court will proceed to review the appellant's CUE-claim arguments presented on appeal of the November 1999 BVA decision.

### C. Construction of Basic Statutory Provisions in Tandem in Light of VA Regulations Setting Forth VA's Statutory Interpretation

Before we address the appellant's specific contentions, we will set forth and examine the two statutory provisions in question and VA's regulations interpreting them, and set forth the various elements and burdens of proof that apply to the operation of the presumptions of sound condition and aggravation.

Two provisions then and now in chapter 11 of title 38, U.S. Code, are implicated here. Section 311 of title 38 of the U.S. Code provided at the time of the 1983 BVA decision:

> [E]very veteran [in the active military, naval, or air service during a period of war] shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance, and enrollment, or *where clear and unmistakable evidence demonstrates that the injury or disease* existed before acceptance and enrollment and *was not aggravated by such service*.

38 U.S.C. § 311 (1979) (emphasis added). Section 353, titled "Aggravation", then provided:

> A preexisting injury or disease *will be considered to have been aggravated* by active military, naval, or air service, where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease.

38 U.S.C. § 353 (1979) (emphasis added). The same language is currently found in sections 1111 and 1153, respectively. Although the appellant refers to sections 1111 and 1153, the Court will generally discuss the statutory interpretation questions by reference to former sections 311 and 353, the statutory sections extant at the time of the 1983 Board decision.

Perhaps the largest imponderable in the statutory scheme regarding the question of when preexisting disability will be found to be aggravated by a veteran's service is an apparent disconnect between sections 311 and 353 as to whether the Secretary has the burden of disproving aggravation in certain cases of preexisting conditions, as the appellant contends is required by section 311, or whether the Secretary has such a burden *only* when the evidence is at least in equipoise that a preexisting condition has increased in severity in a nontemporary way during service. *See generally Beverly v. Brown*, 9 Vet.App. 402, 405 (1996) ("[t]he presumption of aggravation [under section 1153] is applicable only if the preservice disability underwent an increase in severity during service"); *Falzone v. Brown*, 8 Vet.App. 398, 402 (1995) (same). The two statutory provisions have five key elements or concepts that must be understood and considered: (1) Presumption of "sound condition" (section 311); (2) "noted at the time of the examination, acceptance, and enrollment" (section 311); (3) presumption that a condition not so "noted" at entry "was . . . aggravated by such service" except "where clear and unmistakable evidence demonstrates" no aggravation (section 311); (4) presumption that a "preexisting injury or disease [was] . . . aggravated by . . . service, where there is an increase in disability during such service" (section 353); and (5) "a specific finding that the increase in disability is due to the natural progress of the disease" (section 353).

11

"'The starting point in interpreting a statute is its language.'" *Lee (Raymond) v. West*, 13 Vet.App. 388, 394 (2000) (quoting *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993)). As we recently explained:

> The "plain meaning [of a statute] must be given effect unless a 'literal application of [the] statute [or regulation] will produce a result demonstrably at odds with the intention of its drafters.'" *Gardner v. Derwinski*, 1 Vet.App. 584, 586-87 (1991), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 . . . (1994); *Fagan*[ *v. West*], 13 Vet.App. [48,] 52 [(1999)]; *Curtis*[ *v. West*], 11 Vet.App. [129,] 133 [(1998)]. "If the intent of Congress is clear, that is the end of the matter". *Skinner v. Brown*, 27 F.3d 1571, 1572 (Fed. Cir. 1994) (quoting *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 . . . (1984)), *aff'ing* 4 Vet.App. 141 (1993) (mem.).

*Lee (Raymond)*, *supra*. Each "part or section of a statute should be construed in connection with every other part or section so as to produce a harmonious whole." *Meeks v. West*, 12 Vet.App. 352, 354 (1999) (internal quotation and citation omitted); *see also Cottle v. Principi*, 14 Vet.App. 329, 334 (2001); *Talley v. Derwinski*, 2 Vet.App. 282, 286 (1992). This Court has previously held:

> "[I]t [is] fundamental that a section of a statute should not be read in isolation from the context of the whole act, and that in fulfilling our responsibility in interpreting legislation, 'we must not be guided by a single sentence or member of a sentence, but [should] look to the provisions of the whole law, and to its object and policy.'"

*Moreau v. Brown*, 9 Vet.App. 389, 396 (1996) (quoting *Richards v. United States*, 369 U.S. 1, 11 (1962) (quoting *Mastro Plastics Corp. v. NLRB*, 350 U.S. 270, 285 (1956))), *aff'd*, 124 F.3d 228 (Fed. Cir. 1997).

The precise question here is what is the relationship between the section 311 concept of presuming aggravation "except . . . where clear and unmistakable evidence demonstrates that the injury or disease . . . was not aggravated by . . . service" and the provisions of section 353 directing that a "preexisting injury or disease will be considered to have been aggravated by . . . service, where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease." The appellant in effect contends that there is no relationship – that is, that section 353 has no applicability to a case such as this where the condition in question was not "noted at the time of the examination, acceptance, and enrollment", and we will address this point in detail in part II.D.1., below. An examination of the

texts of the two statutory provisions leads us to conclude that there is no plain meaning in those statutory provisions when read together and no "clear" intent of Congress in this respect and, hence, that there is ambiguity in the statutory scheme. *See Barnhart v. Walton*, ___ U.S. ___, ___, 122 S. Ct. at 1265, 1270-71 (2002).

The relationship between the provisions of section 311 and of section 353 had not been specifically addressed by Congress in 1983, nor has it been today. Therefore, the Secretary, who was charged with the responsibility for applying those provisions, was responsible for interpreting them, and he wrote regulations doing so, *see* 38 U.S.C. § 210(c)(1) (1979) (currently codified at 38 U.S.C. § 501(a)(1)), specifically, 38 C.F.R. §§ 3.304 (direct service connection; wartime and peacetime) and 3.306 (aggravation of preservice disability). These provisions provide in pertinent part:

> **§ 3.304  Direct service connection; wartime and peacetime.**
>
> . . . .
>
> (b) *Presumption of soundness*. The veteran will be considered to have been in sound condition when examined, accepted and enrolled for service, except as to defects, infirmities, or disorders noted at entrance into service, or where clear and unmistakable (obvious or manifest) evidence demonstrates that an injury or disease existed prior thereto. Only such conditions as are recorded in examination reports are to be considered as noted.

38 C.F.R. § 3.304(b) (1982).

> **§ 3.306  Aggravation of preservice disability.**
>
> (a) *General*. A preexisting injury or disease will be considered to have been aggravated by active military, naval, or air service, where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease.
>
> (b) *War service*. Clear and unmistakable evidence (obvious or manifest) is required to rebut the presumption of aggravation where the preservice disability underwent an increase in severity during service.

38 C.F.R. § 3.306(a), (b) (1982).

13

Under *Chevron*, the Court must defer to permissible agency constructions of a statute, if "Congress has not directly addressed the precise question at issue". *Chevron*, 467 U.S. at 843. The U.S. Supreme Court recently restated the proper inquiry under *Chevron*:

> Consequently, the legal question before us is whether the [a]gency's interpretation of the statute is lawful. This Court has previously said that, if the statute speaks clearly "to the precise question at issue," we "must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S.[] at 842-843 . . . . If, however, the statute "is silent or ambiguous with respect to the specific issue," we must sustain the [a]gency's interpretation if it is "based on a permissible construction" of the Act. *Id.*[] at 843 . . . . Hence we must decide (1) whether the statute unambiguously forbids the [a]gency's interpretation, and, if not, (2) whether the interpretation for other reasons, exceeds the bounds of the permissible. *Ibid.*; *see also United States v. Mead Corp.*, 533 U.S. 218, 227 . . . (2001).

*Walton*, *supra*, 122 S. Ct. at 1269. A competing principle of statutory construction is that, where a statute is ambiguous, "interpretive doubt is to be resolved in the veteran's favor." *Brown v. Gardner*, 513 U.S. at 118; *see also Allen v. Brown*, 7 Vet.App. 439, 448 (1995) (en banc) (applying *Brown v. Gardner* principle to rule in appellant's favor on question of statutory interpretation). We will address in part II.D.1., below, the application of these competing principles for interpreting ambiguous statutory language.

The Secretary contends that, in writing regulations, he was called upon to reconcile the provisions of sections 311 and 353 in order to resolve the ambiguity that arises when they are read in tandem, *see Cottle*, *Meeks, Moreau*, and *Talley*, all *supra*, and that such reconciliation has been done in § 3.304(b) and § 3.306(a). The Court agrees with the Secretary's position.

The Secretary has attempted to resolve the statutory ambiguity by implementing sections 311 and 353 in these **two** regulations, as to "noted" on entry into service in § 3.304 and as to aggravation in § 3.306. In the Secretary's regulatory scheme, he has, in essence, applied section 353 as an elucidation of the last seven words of section 311 ("and was not aggravated by such service") and has applied the section 311 clear-and-unmistakable-evidence standard to the second part of section 353 ("unless there is a specific finding that the increase in disability is due to the natural progress of the disease"). Notwithstanding that the Secretary's interpretation, in his regulations, of the two sections in tandem negates a statutory construction that section 311 established an independent statutory presumption of aggravation, the Court holds that this interpretation is not unreasonable and

14

is a permissible construction by the Secretary of the statutory provisions at issue. *See Chevron*, 467 U.S. at 844-45 (establishing that where statute does not directly address precise question at issue, Court should follow agency regulation as long as "based on a permissible construction of the statute" and not "arbitrary, capricious, or manifestly contrary to the statute"); *Adams v. West*, 13 Vet.App. 453, 457 (2000). *Cf. Brown v. Gardner*, 513 U.S. at 122 (holding that longstanding agency interpretations that have not been subject to judicial review are not due deference simply because of their longevity).

In *Crowe v. Brown*, the Court described the presumption of aggravation in the following terms:

> Even if the [appellant's condition] is properly found to have preexisted service, the presumption of aggravation must also be addressed. When a condition is properly found to have been preexisting (either because it was noted at entry or because preexistance was demonstrated by clear and unmistakable evidence), the presumption of aggravation provides:
>
> > A preexisting injury or disease will be considered to have been aggravated by active military, naval, or air service, ***where there is an increase in disability during such service***, unless there is a specific finding that the increase in disability is due to the natural progress of the disease.
>
> 38 U.S.C. § 1153 (emphasis added); *see also* 38 C.F.R. § 3.306(a) (1993).

*Crowe*, 7 Vet.App. 238, 247 (1994).

We thus read the statutory and regulatory scheme as follows: § 3.306(a), which, as stated above, is the relevant regulatory provision for examining the aggravation language in section 311, provides that a preexisting condition, whether noted at entry or shown by clear and unmistakable evidence, will be considered to be aggravated by service only "where there is [a nontemporary] increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease". 38 C.F.R. § 3.306(a). The statutory (sections 311 and 353) and regulatory (§§ 3.304(b) and 3.306) provisions operate so that the section 353 and § 3.306(a) presumption of aggravation is raised "[w]hen a condition is properly found to have been preexisting", *Crowe*, *supra* – that is, either found by evidence at least in equipoise showing that the condition was "noted" at entry or found by clear and unmistakable evidence where not so noted –

15

and when the evidence is at least in equipoise that the preexisting condition has increased in severity of disability, that is, that "there was a [nontemporary] worsening of the veteran's underlying [condition] during service", *id.* at 248. *See also Routen v. West*, 142 F.3d 1434, 1440 (Fed. Cir. 1998) (regarding presumption of aggravation, stating that "[t]he presumption affords a party, for whose benefit the presumption runs, the luxury of not having to produce specific evidence to establish the point at issue[; w]hen the predicate evidence is established that triggers the presumption, the further evidentiary gap is filled by the presumption"). Unless the evidence shows such a nontemporary "increase in severity of the disability, however, the presumption of aggravation does not apply and no such specific finding [that the increase in severity was due to the natural progress of the disease] need be made." *Daniels v. Gober*, 10 Vet.App. 474, 479 (1997). When, on the other hand, the presumption of aggravation is raised by the evidence of record, "[i]t is the Secretary's burden to rebut the presumption of in-service aggravation." *Crowe*, 7 Vet.App. at 247. According to 38 C.F.R. § 3.306 (1982), in the case of wartime service, the presumption of aggravation is rebutted by "[c]lear and unmistakable evidence" that the "worsening was due to the natural progress of the [condition]", *Crowe*, 7 Vet.App. at 248. (We note that the then-extant version of § 3.306 provided for the presumption to be rebutted by a "specific finding", based on a preponderance of the evidence of record, in the case of *all* peacetime service, whereas the current version of § 3.306 provides for the presumption to be rebutted by "[c]lear and unmistakable evidence" in the case of peacetime service after December 31, 1946 (38 C.F.R. § 3.306(b)), and by a "specific finding" in the case of peacetime service prior to December 7, 1941 (38 C.F.R. § 3.306(c)). However, this regulatory change is immaterial to the instant discussion, because we are dealing only with wartime service.)

### D. Principal CUE-Merits Arguments

Against this backdrop, we will now discuss the appellant's principal contentions, which he casts in terms of the current statutory section numbers (sections 1111 and 1153). The appellant argues before this Court that the Board in 1983 committed CUE in denying his appeal on the ground that there was no evidence that he had reinjured his knee or that there had been an increase in the underlying knee pathology during service. The appellant makes three principal arguments for reversal on the basis of CUE: (1) The aggravation-of-injury rule in section 1153 applies only to

16

injuries noted upon entry into service and where the only issue is aggravation; (2) the ***absence of evidence*** of aggravation cannot constitute "clear and unmistakable evidence" under section 1111 that his injury was not aggravated by service; and (3) medical-judgment evidence alone can never rebut the presumption of soundness under current section 1111.

### *1. Not-Noted-on-Entry-into-Service Argument*

The appellant's principal argument is that the presumption of aggravation in section 1111 (former section 311) applies whenever the defect is not noted upon entry into service and that section 1153 (former section 353) applies only when the defect ***is*** noted upon entry and the only issue is aggravation.

The appellant would have the Court read section 311 in isolation from section 353 in certain cases (i.e., where the preexisting condition was ***not*** noted at entry). This reading would violate the principle set forth in *Cottle, Meeks, Moreau*, and *Talley*, all *supra*. Although it is true that, under *Brown v. Gardner*, "interpretive doubt is to be resolved in the veteran's favor", *Brown*, 513 U.S. at 118, we cannot blindly adopt a statutory interpretation simply because it would be beneficial to some claimants if that interpretation does not present a competing reasonable interpretation. For example, when carried to its logical culmination, the appellant's argument would yield a finding that a certain condition was incurred in service when there was no evidence whatsoever that any condition had arisen in service and when the claimant had failed to report a preexisting condition. This contrasts starkly with a case where evidence did not show service incurrence of a condition and where a preexisting condition ***was*** noted at entry into service. In the first case, under the appellant's theory, a claimant would likely be awarded service connection, whereas in the second case, the claimant would not; such a scenario could perversely reward claimants who were less than fully honest in reporting preexisting conditions at entrance examinations. Although the appellant presents, with no citation to any authority, a possible reason for such disparate results – that if the government fails to uncover a defect, infirmity, or disorder on an entrance examination, then a form of strict liability should be imposed on the government – the Court nonetheless finds these results too anomalous to constitute such a clear and unambiguous statutory interpretation as to override under *Chevron* the Secretary's reasonable statutory interpretation in his regulations. The appellant's theory ignores the

17

individual responsibility of the person entering service to advise accurately as to medical problems and history at the time of entry. Indeed, that very obligation applies to the instant case.

Hence, we hold that, under *Brown v. Gardner*, we must resolve interpretative doubt in favor of claimants only where there are competing *reasonable* interpretations of an ambiguous statutory provision and that, consequently, that interpretive doctrine cannot, by definition, be applied to lead to a statutory interpretation that produces an absurd result, such as the appellant's interpretation would lead to here, because such an interpretation would be inherently not "reasonable". *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 68-69 (1994); *Timex V.I., Inc. v. United States*, 157 F.3d 879, 886 (Fed. Cir. 1998); *Thayer v. Principi*, 15 Vet.App. 204, 210 (2001); *Cottle*, 14 Vet.App. at 334; *Faust v. West*, 13 Vet.App. 342, 350 (2000); *Trilles v. West*, 13 Vet.App. 314, 324 (2000) (en banc); *Davenport v. Brown*, 7 Vet.App. 476, 483-84 (1995); *Conary v. Derwinski*, 3 Vet.App. 109, 111-12 (1992) (per curiam order) (Steinberg, J., concurring). Furthermore, deference to the Secretary's interpretation of the statutory provisions, as called for in *Chevron*, *supra*, applies here and militates strongly in favor of our upholding the Secretary's regulations because their content is reasonable. We note, as the Federal Circuit previously has pointed out, that in certain cases there may be tension between the principle enunciated in *Brown v. Gardner*, *supra*, and the deference called for in *Chevron*, *supra*, i.e., where the Secretary has presented one reasonable interpretation to resolve ambiguity in the statute (and hence *Chevron, supra,* should apply) and the appellant has presented a different, but also reasonable, interpretation to resolve the ambiguity (and hence *Brown v. Gardner, supra*, would seem to apply). *See Nat'l Org. of Veterans' Advocates v. Secretary of Veterans Affairs*, 260 F.3d 1365, 1378-79 (Fed. Cir. 2001). However, this is not one of those cases, because we have determined above that the appellant's interpretation of the statutory ambiguity would lead to absurd results and thus is not a reasonable interpretation. Therefore, because the Court is not presented with two reasonable, yet conflicting, interpretations, we need not resolve in this case this tension between *Brown v. Gardner, supra*, and *Chevron, supra*.

### 2. *Absence of Evidence*

The appellant also argues: "The absence of evidence [of aggravation] could not satisfy the [section 311] statutory requirement for clear and unmistakable evidence in this case." Br. at 9. The Secretary counters that the appellant's argument is contrary to the Federal Circuit's decision in

*Maxson v. Gober*, 230 F.3d 1330 (Fed. Cir. 2000). Mot. at 7-8. The Federal Circuit held in *Maxson* regarding the consideration of the absence of evidence in aggravation claims:

> [E]vidence of a prolonged period without medical complaint can be considered, along with other factors concerning the veteran's health and medical treatment during and after military service, as evidence of whether a pre[]existing condition was aggravated by military service. *See* 38 C.F.R. § 3.306(b) ("[a]ggravation may not be conceded where the disability underwent no increase in severity on the basis of all the evidence of record pertaining to the manifestations of the disability prior to, during and subsequent to service[]"). The trier of fact should consider all of the evidence including the availability of medical records, the nature and course of the disease or disability, the amount of time that elapsed since military service, and any other relevant facts.

*Maxson*, 230 F.3d at 1333. The appellant attempts to distinguish his case from *Maxson* by stating: "*Maxson* involved 38 U.S.C.[] §§ 1153 . . . [and] 1154(b) and this appeal is based on the [section] 1111 presumption of soundness. The standard for rebuttal in *Maxson* was . . . 'clear and convincing evidence to the contrary.' . . . The standard for rebuttal in this case under [section] 1111 is clear and unmistakable evidence." Reply Br. at 6-7. Based on our holding in part II.C., above, the appellant's argument that the presumption of aggravation arises under section 311, rather than under section 353, is unavailing.

As to the rebuttal of the presumption of aggravation, any examination of the kind of evidence that can be relied on by VA to rebut the section 353 presumption of aggravation must, as the appellant suggests, take into account the very high standard of proof ("clear and unmistakable evidence") required for such rebuttal. That standard of proof should, by itself, be enough to defeat any theory that the analysis in *Maxson* would allow the Secretary to rebut the section 353 presumption of aggravation merely by the absence of evidence. Moreover, *Maxson* itself did not endorse allowing the absence of evidence, standing alone, to rebut a presumption; rather, the opinion stated that the absence of evidence "can be ***considered***, ***along with other factors***". *Maxson*, 230 F.3d at 1333 (emphasis added). Thus, we hold that, in accordance with the general logic of *Maxson*, supra, the absence of evidence ***may be considered as one factor*** in rebutting the section 353 presumption of aggravation.

Moreover, the appellant's concerns about this point appear to be misplaced in this case, because the November 1999 Board decision discussed, as did the April 1983 Board decision being

challenged on CUE grounds, the ***positive*** evidence of record, including, inter alia, the reports of the Medical Board (R. at 22-25) and Dr. Scott's letter (R. at 80). R. at 8, 98. The November 1999 Board decision further noted that the report of the Medical Board made an ***affirmative*** finding of no aggravation. *See* R. at 8. The sole possible references to the absence of any evidence occurred in (1) the April 1983 Board decision, wherein the Board, after noting that "the activities of recruit training may have been painful due to an increased use of the affected joint", stated: "[T]he Board finds no evidence of reinjury or other clinical findings showing an increase in the underlying pathology of [the veteran's] knee disorder" (R. at 98) and (2) the November 1999 Board decision, wherein the Board stated that "private medical records dated subsequent to service show no complaint or finding relative to the right knee" (R. at 8). However, such consideration was only one factor in the analysis in both Board decisions. Hence, mindful of the considerable reliance on the positive evidence of record by the Board in both 1983 and 1999, the Court holds that, to the extent that the Board did consider the absence of evidence in its 1983 and 1999 determinations, its actions certainly were not arbitrary or capricious. *See* 38 U.S.C. § 7261(a)(3)(A); *Link v. West*, 12 Vet.App. 39, 44 (1998); *Eddy* and *Russell*, both *supra*.

### 3. Medical-Judgment Evidence

Finally, the appellant argues with considerable force that Congress, by substituting in section 311 the phrase "or where clear and unmistakable evidence demonstrates that the injury or disease existed prior to acceptance and enrollment and was not aggravated by such active military or naval service" in place of "or where evidence or medical judgment is such as to warrant a finding that the injury or disease existed prior to acceptance and enrollment", intended that "medical judgments alone, regardless of how emphatic or numerous, are insufficient as a matter of law to rebut the [section] 1111 presumption." Br. at 18. The appellant further argues that this Congressional intent is demonstrated by comparing the language of the amended current section 1111 with the language of the current section 1132 peacetime presumption of soundness, which retains the "medical judgment" language. The appellant states as follows:

> The statutory scheme enacted by Congress is intended to treat veterans of wartime service more favorably than those who served only in peacetime. That intention is carried out, in part, by providing veterans of wartime service with a presumption of soundness that is more difficult for the government to rebut. The very existence of

separate statutes containing different language strongly indicates [that] Congress intended a meaningful difference between the two.

Reply Br. at 5.  Insofar as this point goes, the appellant's reasoning is unexceptionable.

Prior to 1958, both the wartime and the peacetime presumptions of soundness were contained in Veterans' Regulation No. 1(a) (Reg. 1(a)).  38 U.S.C.A. app. ch. 12 (West 1942); *see generally Akins v. Derwinski*, 1 Vet.App. 228, 231 (1991).  As of 1942, the wartime presumption was contained in part I of Reg. 1(a), which was entitled "Pensions to Veterans and the Dependents of Veterans for Disability or Death Resulting From Active Military or Naval Service During the Spanish-American War, Boxer Rebellion, Philippine Insurrection, and/or The World War".  Paragraph I(a) of part I listed the qualifications for a veteran to be considered to have had wartime service, including limiting such service to the dates of the conflicts listed in the heading of this part (and listing dates ranging from April 1917 to June 1921 for qualifying service in "The World War" (i.e., World War I)).  That presumption of soundness read:

> (b) That for the purposes of paragraph I(a) hereof every person employed in the active military or naval service for 90 days or more, shall be taken to have been in sound condition when examined, accepted, and enrolled for service except as to defects, infirmities, or disorders noted at time of the examination, acceptance, and enrollment, or where evidence *or medical judgment* is such as to warrant a finding that the injury or disease existed prior to acceptance and enrollment.

Reg. 1(a), Part I, para. I(b), 38 U.S.C.A. app. ch. 12 (emphasis added).  The peacetime presumption as of 1942 listed qualifications for "peacetime" service and contained a virtually identical presumption of soundness to the wartime presumption of soundness, with the exception of a requirement of "six months or more" of active military or naval service.  Reg. I(a), Part II, para. I(b), 38 U.S.C.A. app. ch. 12.

The wartime presumption of soundness was amended by Congress in 1943, in pertinent part as follows:

> Sec. 9.
>
> . . . .
>
> (b)  Paragraph I(b), part I, Veterans Regulation Numbered 1(a), as amended, is hereby amended to read as follows:

21

"(b) For the purposes of paragraph I(a) hereof every person employed in the active military or naval service shall be taken to have been in sound condition when examined, accepted, and enrolled for service except as to defects, infirmities, or disorders noted at time of the examination, acceptance, and enrollment, or where clear and unmistakable evidence demonstrates that the injury or disease existed prior to acceptance and enrollment *and was not aggravated by such active military or naval service*."

Pub. L. No. 78-144, § 9(b) (1943) (codified as 38 U.S.C. app. ch. 12) (emphasis added). This is the first time that "aggravation" appears in either provision (wartime or peacetime) regarding the presumption of soundness. The legislative history accompanying this amendment described the purpose of the bill containing this amendment, as well as this particular amendment, as follows: "Briefly, the bill is designed to correct inequalities arising under existing law, with a view to simplifying adjudicative practices and administrative procedure by establishing uniform provisions wherever possible." H.R. Rep. No. 78-463 (1943), *reprinted in* 1943 U.S.C.C.A.N. 2159, 2160.

Both the wartime and peacetime presumptions of soundness were codified into title 38 of the U.S. Code in 1958. *See* Pub. L. No. 85-857, §§ 311, 332, 72 Stat. 1105, 1119, 1122-23 (codified at 38 U.S.C. §§ 311, 332 (1958)). Both presumptions were renumbered to their current designations in 1991 (section 1111 for the wartime presumption and section 1132 for the peacetime presumption). *See* Pub. L. No. 102-83, §5(a), (c)(1), 105 Stat. 406 (1991). (At that same time, section 353 was renumbered as section 1153. *Ibid.*) Apart from minor technical revisions that do not affect the language under consideration here, the current peacetime presumption is unchanged from its form in 1942, and the current wartime presumption is unchanged from its amended form in 1943. Obviously, therefore, both presumptions were also unchanged from their previous (1942 and 1943, respectively) forms in 1983, at the time of the Board decision now being collaterally attacked on the basis of CUE.

As stated in part II.C., above, "'[t]he starting point in interpreting a statute is its language.'" *Lee (Raymond)*, *supra*. An application of the plain meaning of section 311 would *not* operate in the manner described by the appellant; nothing in the expression "where clear and unmistakable evidence demonstrates", standing alone, would operate to exclude medical-judgment evidence as the sole source of the "clear and unmistakable evidence". *Cf.* NORMAN J. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION [hereinafter SUTHERLAND'S] § 45:09 (6th ed. 2000) ("[k]nowing the

22

purpose behind the statute could help the court decode ambiguous text, but first there must be some ambiguity").  Therefore, in order to evaluate the appellant's argument, we assume that he is arguing that a literal application of the statute that permitted reliance solely on medical-judgment evidence would "produce a result demonstrably at odds with the intention of its drafters", *Gardner*, *supra*, or an absurd result, *see X-Citement Video, Inc.*, *Timex V.I., Inc.*, *Thayer, Cottle, Faust, Trilles*, *Davenport*, and *Conary*, all *supra.*

In this context, the Court notes that the appellant, in his effort to demonstrate that "Congress acted intentionally" in the manner he describes, refers to no legislative or regulatory history or caselaw to support his position.  In fact, the only authority that he cites for his arguments regarding Congressional intent is a recitation of the text of the 1943 amendment to the wartime presumption and a comparison of the plain language of the wartime and peacetime presumptions.  Br. at 17-18.  Although this comparison is not without some persuasiveness, it does not, without any buttressing authority, show an intention of the drafters that is sufficiently clear to overcome the *Gardner* "plain meaning" rule noted in part II.C., above.  *See Lee (Raymond)*, *supra*.

The Court agrees that, in giving meaning to the words of the section 311 presumption, attention must be given to the fact that a different standard is contained in the parallel provision of section 332.  *See* SUTHERLAND'S §§ 46:05 ("A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent.  Consequently, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole.  Thus, it is not proper to confine interpretation to the one section to be construed."), 46:06 ("when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended"; "[w]hile every word of a statute must be presumed to have been used for a purpose, it is also the case that every word excluded from a statute must be presumed to have been excluded for a purpose"); *see also Cottle*, *Meeks, Moreau*, and *Talley*, all *supra*.

The appellant argues that the mere difference in language, brought about by the 1943 amendment of the wartime presumption, signifies on its face an intent by Congress "to treat veterans of wartime service more favorably than those who served only in peacetime . . . by providing veterans of wartime service with a presumption of soundness that is more difficult for the

23

government to rebut." Reply Br. at 5. The appellant also argues that this heightened standard is accomplished, at least "in part", by not allowing medical-judgment evidence, standing alone, to be sufficient evidence to rebut the wartime presumption, and that this is evidenced by the excision of the phrase "or medical judgment" from the wartime-presumption provision. *See* Br. at 18; *see also* Reply Br. at 5. The appellant's argument fails for two reasons: First, the appellant provides no other evidence that his interpretation does, in fact, accurately reflect the will of Congress; and, second, a virtually identical argument regarding the construction of section 311 (there in terms of section 1111) has already been considered and rejected by the Court in *Adams*, 13 Vet.App. at 456.

Giving full effect to the 1943 change in language, it is clear that Congress created a standard for the wartime presumption that differs from the peacetime presumption. This standard ("clear and unmistakable evidence") is more difficult to meet than the peacetime-presumption standard of "where evidence or medical judgment is such as to warrant a finding that the disease or injury existed before acceptance and enrollment". There is no evidence of a clear Congressional intent to override the plain-meaning statutory language in section 311.

The clearly expressed purpose of the 1943 amendment to the wartime presumption was to extend this presumption to veterans of World War II. *See* H.R. Rep. No. 78-463 (1943), *reprinted in* 1943 U.S.C.C.A.N. 2159, 2160 ("[s]ections 9 to 13, inclusive, contain provisions applying to World War II veterans, the presumption of soundness and rebuttable presumption of service connection for chronic diseases"); *see also* Pub. L. No. 78-144 (1943) (codified as 38 U.S.C. app. ch. 12). This was done because eligibility for the wartime presumption was strictly limited to only those veterans of the specifically enumerated wartime service, which did not, at that time, include service during World War II. *See ibid.* The legislative history does ***not*** address the addition of the term "clear and unmistakable evidence" and the excision of the term "medical judgment". Given the preexisting difference in treatment of the presumptions for wartime versus peacetime veterans (i.e., qualifying service of 90 days versus six months), it seems reasonable to conclude, as the appellant argues, that this change was made with the purpose of providing veterans of wartime service with a presumption that is more difficult to rebut.

It does ***not***, however, follow that this heightened standard was to be effectuated by diminishing the role of medical-judgment evidence in rebutting this presumption. We must

recognize that, because medical conditions are involved in these claims, it would be absurd to conclude that medical judgment has no role or indeed cannot play a conclusive role in making a determination under this provision. *See generally X-Citement Video, Inc.*, *Timex V.I., Inc.*, *Thayer*, *Cottle*, *Faust*, *Trilles*, *Davenport*, and *Conary*, all *supra*. To the contrary, an interpretation that medical-judgment evidence is now *encompassed within* the rubric of "clear and unmistakable evidence" gives full effect to the apparent clear intent of Congress to provide for a more stringent standard for rebutting the wartime presumption. Simply put, medical-judgment evidence, standing alone, *may* in fact be used to rebut the wartime presumption, *so long as* that evidence rises to the level of "clear and unmistakable evidence". Although the appellant has presented what may be one logical view of the legislative history, the above interpretation is certainly equally logical. However, there is no tension here between the doctrines of *Chevron* and *Brown v. Gardner* because the operative test, as stated in part II.D.1., above, applies not when two logical views of legislative history are in conflict, but when two *reasonable interpretations of the statutory text* are in conflict. Although, as noted above, it may be a *logical* reading of the *legislative history* that the presumption was changed in order to provide veterans of wartime service with a presumption that is more difficult to rebut, it is not a *reasonable interpretation* of the *statute* to say that this change was effectuated so as to preclude medical-judgment evidence rising to the level of "clear and unmistakable evidence", standing alone, to rebut the wartime presumption. The Secretary's interpretation of the statutory provision being a reasonable one, it is thus entitled to deference on this point. *See Chevron*, *supra*.

The appellant's argument also seems to contravene the Court's analysis in *Adams*:

> The appellant argues in part that any medical opinion evidence is insufficient as a matter of law to rebut the 38 U.S.C. § 1111 presumption of soundness . . . . The Secretary replies that the Court's caselaw indicates that the use of medical evidence is contemplated for purposes of rebutting the presumption of sound condition . . . . [T]he Court agrees with the Secretary. The Court notes that nothing in the language of section 1111 precludes utilization of such medical evidence. Indeed, the Secretary's implementing regulation, 38 C.F.R. § 3.304(b) (1999), as the Secretary indicates, clearly calls for the use of such medical evidence. *See* 38 C.F.R. § 3.304(b)(1) (determinations whether evidence clearly and unmistakably rebuts the presumption of soundness should be based on medical judgment, accepted medical principles, history with regard to clinical factors pertinent to basic character, origin, development of injury or disease, and "thorough analysis of the evidentiary showing

25

and careful correlation of all material facts, with due regard to accepted medical principles pertaining to the history, manifestations, clinical course, and character of the particular injury or disease or residuals thereof"); *see also Harris v. West*, 203 F.3d 1347 (Fed.[]Cir. 2000) ("there is no absolute rule in the statute, the regulation, or the case law requiring [contemporaneous clinical evidence or recorded history] before the presumption [of sound condition] may be rebutted," and post-service physician opinion may constitute requisite clear and [unmistakable] evidence) . . . .

*Adams*, 13 Vet.App. at 456. In an attempt to distinguish *Adams*, the appellant states: "Even though 38 C.F.R. § 3.304(b) 'clearly calls for the use of such evidence,' *Adams*[, *supra*], that administrative regulation cannot override the intent of Congress as expressed in statutes." Reply Br. at 5. As explained above, however, there is in fact no clear Congressional intent to ban or to limit the use of medical-judgment evidence in rebutting this presumption. The appellant further attempts to distinguish *Adams* by stating: "It is the duty of this Court to say what the law is by harmonizing the statutory scheme, and the Court did not harmonize 38 U.S.C.[] § 1111 with 38 U.S.C.[] § 1132 in *Adams*." Reply Br. at 5. The Court has in this opinion conducted such a review of the full statutory scheme and found that it does not support the appellant's contentions as to Congress' purpose in enacting the former statutory provisions.

### 4. Conclusion as to Statutory-Interpretation Arguments

The appellant's arguments must be viewed in the context of the instant CUE challenge rejected by the Board. The appellant would not only have to prove that at least one of his preceding three statutory-interpretation arguments is persuasive, which he has not done, but he also would have to show that the Board's 1999 decision, in rejecting such an argument, was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" (38 U.S.C. § 7261(a)(3)(A)). Because the appellant has failed to make such a persuasive statutory-interpretation argument, it follows that he has not demonstrated that the Board decision was arbitrary or capricious. *See Russell*, 3 Vet.App. at 315.

### 5. Outcome Change

Finally, the Court notes that, even if we were to accept one or all of the appellant's assertions of an error in application of law, specifically the presumption of aggravation, CUE caselaw, as well as the applicable VA regulation, requires a claimant to give "persuasive reasons" why the outcome

26

would have been manifestly changed had that error not been committed. *Fugo*, *supra*; *see also* 38 C.F.R. §§ 20.1403(a), 20.1404(b) (2001); *Bustos*, *Crippen*, *Damrel*, and *Russell*, all *supra*. Because of our conclusions in the prior analysis in parts II D.1, D.2, and D.3, above, we need not address whether the appellant has shown that the outcome would have been manifestly changed but for one of the errors that he asserts was undebatably made. *See* 38 C.F.R. § 20.1403(c); *Fugo* and *Russell*, both *supra*.

### E. Other Arguments

#### 1. Miller v. West

The appellant cites *Miller v. West*, 11 Vet.App. 345, 348 (1998), for the proposition that "[a] bare conclusion, even one written by a medical professional, without a factual predicate in the record does not constitute clear and unmistakable evidence sufficient to rebut the statutory presumption of soundness." This restatement of *Miller*'s holding is accurate, but that proposition does not assist the appellant on the facts of his case. He contends, incorrectly we hold, that the Medical Board report "is completely conclusory with regard to its finding as to aggravation." Br. at 19. In *Miller*, the Court was concerned with a medical report that was "not supported by any contemporaneous clinical evidence or recorded history in th[e] record". *Miller*, *supra*. Here, in contrast, the Medical Board report at issue did state a history of the appellant and reflected at least examination of x-rays as well as a general physical examination. R. at 24. Furthermore, the November 1999 BVA decision found that other evidence, including Dr. Scott's letter (R. at 80), also supported the finding of no aggravation. R. at 8. Therefore, unlike in *Miller*, the Medical Board report does not stand alone as the basis for a finding of clear and unmistakable evidence. Finally, in any event, there is not enough evidence in support of the appellant's position so as to find that the November 1999 BVA decision was arbitrary or capricious. *See* 38 U.S.C. § 7261(a)(3)(A); *Russell*, 3 Vet.App. at 315.

#### 2. Reasons or Bases

In addition to examining whether a Board decision reviewing a previous BVA decision for CUE is arbitrary or capricious, 38 U.S.C. § 7261(a)(3)(A), the Court must also examine the Board decision to determine whether it is supported by an adequate statement of "reasons or bases", 38 U.S.C. § 7104(d)(1). *See Beyrle*, *supra*; *Eddy*, 9 Vet.App. at 57; *Russell*, 3 Vet.App. at 315; *Gilbert*, *supra*. The Board decision on appeal stated that, although "during [his] service, the veteran

27

apparently reported some increase in symptomatology, private medical records dated subsequent to service show no complaint or finding relative to the right knee". R. at 8. The appellant states that these records were "not before and not relied on by the 1983 Board in reaching [its] decision". Reply Br. at 7. The only evidence of post-service medical records in the record on appeal are several brief entries dating from 1972 to 1979, on an unidentified physician's record. R. at 81-83. These records apparently were received by the Board at the appellant's August 1982 hearing. R. at 80. Therefore, the appellant's contention that these records were "not before" the Board in 1983 appears to be incorrect; although the 1983 Board decision does not explicitly mention these records (R. at 95-99), they appear to have been before the Board and cannot, without some further showing by the appellant, be said not to have been "relied on" by the Board. Further, the Court has recognized (in a non-CUE context) that, in reviewing the determination whether or not evidence constitutes clear and unmistakable evidence, "the Court considers the history recorded at the time of examination together with 'all other material evidence'". *Crowe*, 7 Vet.App. at 245-46 (quoting 38 C.F.R. § 3.304(b)(1)). The appellant has presented no argument that such postservice medical evidence is not "material". Therefore, the consideration of such evidence in the 1999 Board decision was not arbitrary or capricious, *see* 38 U.S.C. § 7261(a)(3)(A), *Link*, *Eddy*, and *Russell*, all *supra*, and the Court finds that the Board decision on this point is supported by an adequate statement of reasons or bases; *see* 38 U.S.C. § 7104(d)(1); *Beyrle*, *Eddy*, *Russell*, and *Gilbert*, all *supra*. Finally, we note that the appellant argues for reversal and not a reasons-or-bases remand in this case.

### III. Conclusion

On consideration of the foregoing analysis, the parties' pleadings, and a review of the record on appeal, the Court holds that the appellant has not demonstrated that the determination in the Board's November 1999 decision that there was no CUE in the April 22, 1983, Board decision was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law. *See* 38 U.S.C. § 7261(a)(3)(A); *Link*, *Eddy*, and *Russell*, *all supra*. Nor did the Board decision violate the "reasons or bases" requirement of 38 U.S.C. § 7104(d)(1), *see Beyrle*, *Eddy*, and *Russell*, all *supra*; *Gilbert,* 1 Vet.App. at 56-57. Accordingly, the November 1999 decision of the Board is AFFIRMED.